Evelyn Sanders appeals from a judgment affirming the City of Dothan's revocation of her license to operate the Salt N Pepper Lounge. We affirm.
On November 17, 1992, Evelyn Sanders[1] received a letter from the City's attorney, stating:
 "You are hereby notified that on Tuesday, November 24, 1992, at 10:00 AM in the Commission Chambers of City Hall, 126 N. St. Andrews Street, there will be a public hearing concerning the possible revocation of your business license. You should be present at that meeting and show cause why your business license should not be revoked. If you should fail to appear before the governing body at that time and place, the Commissioners will hear and consider evidence in support of the proposed revocation and may take action in your absence.
 "Please be informed that this action is taken pursuant to Sections 5-13[2] and 5-14[3] of the Code of Ordinances, City of *Page 439 
Dothan. You will have the right to introduce witnesses and evidence in your own behalf, and the governing body shall hear such witnesses and evidence.
 "Please be apprised that the purpose of the revocation hearing is to determine whether or not you are conducting your business in an illegal manner or in such a manner as to be detrimental to public morals or health or so as to constitute a nuisance. In this regard, the city has received numerous complaints concerning the operation of your business. Additionally, Police Department records indicate an excessive number of calls for service to 1202 Reeves Street, the location of your lounge. Also, be apprised that the city has knowledge that the ABC Board found that the partners of the lounge allowed '. . . obscene, lewd and indecent conduct on licensed premises.' Additionally, on October 10, 1992, two individuals were shot and wounded on the premises of the Salt and Pepper Lounge.
 "Because of the problems associated with your business, I am directed by the Mayor and City Manager to request that you present yourself to the city's governing body and show cause as to whether or not your business license should be revoked."
(Emphasis added.)
At the November 24, 1992, hearing, testimony was received from witnesses supporting the proposed revocation and from witnesses opposing it. Testifying in favor of revocation were Police Chief Harold Locke, city attorney Larry Anderson, and James McNealy, whose residence was located approximately 150 feet from the lounge. Testifying in opposition to revocation were Sanders and Anthony Keith. Participating directly in the questioning of the witnesses were city manager Don Marnon and city commissioners Stokes, Clements, Gaut, and Williams. After considerable testimony had been presented, Sanders was informed that the City would vote on the proposal on December 1, one week later. On December 1, 1992, the board of commissioners reconvened and, after further testimony and discussion, voted to revoke Sanders's business license.
On December 9, 1992, Sanders "appealed" the decision to the Houston County Circuit Court, and, concurrently, filed a "Motion for Immediate Hearing or Temporary Restraining Order" and a verified "Amended Complaint for Injunction," through which she sought to enjoin the enforcement of the commission's action. On December 10, 1992, the trial court granted Sanders's motion for a temporary restraining order.
On December 14, 1992, the City moved to dissolve the temporary restraining order, alleging:
 "3. That [at] approximately 3:00 a.m., Sunday, December 13, 1992, while [the lounge was] operating under this Court's temporary restraining order, three individuals received gunshot wounds on the premises of said lounge.
 "4. That the shootings occurred at approximately 3:00 a.m. and yet the City was not notified until approximately 3:45 a.m. by the hospital and not by anyone at the lounge. *Page 440 
 "5. That one of those individuals was a security guard for Salt Pepper Lounge and [that person] died as a result of said gunshot wounds."
On that same day, the trial court dissolved the temporary restraining order.
On December 21, 1992, the trial court conducted a hearing on Sanders's motion for a preliminary injunction. It later denied the motion and scheduled a final hearing for March 17, 1993. After that final hearing, the trial court affirmed the commission's action. Sanders has appealed. As grounds for reversal, Sanders contends (1) that the commission failed to prove that she was operating the lounge in "an illegal manner and detrimental to public morals and health," Brief ofAppellant, at 14, and that her license was revoked (2) in violation of due process guarantee and (3) in violation of equal protection guarantees.
At the outset, it must be noted that notwithstanding the manner in which Sanders's action in the circuit court was styled, she argued to the trial judge that her case was to be treated as a petition for a writ of certiorari, and the judge agreed. Indeed, "common-law certiorari is the appropriate method to have the courts determine the question as to whether a liquor license was revoked without cause where there is no prescribed method." Southall v. Stricos Corp., 275 Ala. 156,159, 153 So.2d 234, 237 (1963) (involving the revocation of a liquor license by the Alabama Alcoholic Beverage Control Board); see also Ott v. Moody, 283 Ala. 288, 216 So.2d 177
(1968) (same); Merchant Seamen's Club of Mobile v. AlabamaAlcoholic Beverage Control Bd., 280 Ala. 173, 190 So.2d 921
(1966) (same); Alabama Leisure Enterprises, Inc. v. MaconCounty Racing Commission, 460 So.2d 195 (Ala.Civ.App. 1984) (common-law certiorari proper method for reviewing propriety of racing commission's denial of application to "build and operate a racing facility"); Alabama State Bd. of Pharmacy v. Peterson,47 Ala. App. 201, 252 So.2d 319 (Ala.Civ.App. 1971). Also, the trial court had before it a certified copy of the minutes of the relevant meetings of the board of commissioners, as well as audio tapes of the meetings. Therefore, the appropriate standard of review in this case is the standard applicable to common-law certiorari.[4]
"[T]he standard of review for certiorari limits the scope of review to questions of law and does not extend to review of the weight and preponderance of the evidence." Parker v. Reaves,531 So.2d 853 (Ala. 1988). Thus, "if there is any legal evidence to support the decision of the lower tribunal, such is conclusive on the reviewing court." Lovelady v. Lovelady,281 Ala. 642, 206 So.2d 886 (1968). In other words, the only question for the reviewing court is "whether the evidence will justify the finding [of the lower tribunal] as a legitimate inference from the facts proved regardless of whether such inference would or would not have been drawn by the appellate tribunal." Alabama Electric Cooperative v. Alabama Power Co.,278 Ala. 123, 126, 176 So.2d 483, 485 (1965). With these principles in mind, we proceed to consider whether the evidence presented to the commission "will justify [its] finding as a legitimate inference." 278 Ala. at 126, 176 So.2d at 485.
 I. Sufficiency of the Evidence
The minutes of the commission meeting contain substantial evidence in support of the City's position, including police records of the number and types of incidents at the lounge requiring police responses between September 1990 and September 14, 1992. Specifically, Police Chief Locke testified that his office had received 101 calls, which resulted in "five arrests, two for assault, one shooting, . . . four burglary arrests of individuals patronizing the business, [and] two alcohol violations." Moreover, he testified: "[O]ne officer cannot police it, it takes at least two or three, preferably four officers to police it *Page 441 
adequately, and from 2:00 a.m. until 4:00 a.m. it takes the constant presence to adequately police it."
But perhaps the most compelling evidence was testimony contained in the police report of Officer Richard Campbell, who drew his weapon and fired warning shots when a crowd of people from the lounge and lounge parking lot attacked him with rocks and bottles as he was attempting to arrest a man involved in a fight at the lounge. The incident was the subject of considerable discussion, some of which included the following excerpt, which was read verbatim from officer Campbell's report at the November 24, 1992, commissioners' meeting and recorded on the audio tape of that meeting:
 "[O]n November 8, 1992, at 3:27 in the morning, I was dispatched to a fight at the Salt Pepper Lounge. I arrived and found two males fighting in the front door of the club. He was fighting with the security guard. They started toward my vehicle, I got out and one of the males . . . was abusive and [used] abusive language to me. I advised him he was under arrest, he struck me in the chest and started to run. I grabbed him, [and] we went to the ground after a short chase. We struggled on the ground and we were on the north side of the club. While we were on the ground, a large crowd gathered and had me where I could not reach my patrol vehicle. Members of the crowd started throwing rocks and bottles at me. I could not get to my radio because of Mr. Carrol, and I was still struggling on the ground. We had gotten between a garbage dumpster and a vehicle parked next to it and I could not move backwards or forward. The crowd was very close and many rocks and bottles were hitting close to my head. I could feel the pieces of glass hitting me. I was struck on the top of my right shoulder with a rock or bottle. I could not tell which it was. I felt that my life was in danger."
Nine days after this incident, Sanders received the letter regarding the proposed revocation. Indeed, the significance attributed to this incident by members of the commission is illustrated by the following excerpt from the minutes:
 "[Commissioner Stokes] said the main concern he had was the nature of the calls, assault[s], shootings, and more seriously to him, the recent assault on the police officer. Commissioner Stokes said the police officer felt his life was in danger by trying to respond to a call to try to maintain public order. He said they have the ABC report[5]
concerning lewd dancing, a recommendation from the police chief, who they hired to maintain public order in the City of Dothan, and he had stated that he felt his police officers were in danger when they go to that club and respond to disturbances."
(Emphasis added.)
Although we might draw inferences from this and other testimony that would differ from those drawn by the commission, the minutes and audio tapes of these meetings contain evidence that "justif[ies] the finding [of the commission] as a legitimate inference from the facts." Alabama ElectricCooperative v. Alabama Power Co., 278 Ala. 123, 126,176 So.2d 483, 485 (1965).
 II. Due Process
Sanders contends that the constitutional guarantee of due process required the City to provide her with specific items of evidence on which it intended to rely at the hearing. In particular, she contends that the City should have given her copies of the police logs, which purported to demonstrate the number and types of police service calls to the lounge. She did not, however, request such materials before the hearing. Therefore, her contention amounts to an assertion that due process required the City, sua sponte, to provide her this evidence. For such a proposition, she cites no authority and we are unaware of any.
Moreover, Sanders was allowed to testify and present witnesses at both commission meetings. Also, at the second meeting, she presented the commissioners a petition containing *Page 442 
names of individuals opposing revocation. Only when — after the final vote was taken — she continued to address the commission was she told that she could no longer speak on the matter. The record does not, therefore, support her contention that she was not afforded an opportunity to be heard.
 III. Equal Protection
Finally, Sanders contends that she was denied equal protection of the laws, because, she says, the City had given "Cowboys," another club in the City, "a second chance for noise and . . . similar complaints to the complaints in this case."Brief of Appellant, at 14. This contention overlooks evidence in the minutes demonstrating that from September 1990 to September 1992 police responded 37 times to calls regarding Cowboys, compared with 101 calls regarding Sanders's lounge during the same period. Perhaps more significantly, it overlooks testimony comparing the grounds of the complaints and police calls generated by Cowboys with the grounds of the complaints and police calls generated by her lounge. According to that testimony, the majority of complaints lodged against Cowboys alleged excessive "noise," while many of complaints or police calls regarding Sanders's lounge alleged "assaults [and] shootings." The evidence produced during the commission meetings thus provides a basis on which the commission — without acting arbitrarily or capriciously — could have decided to revoke the lounge's license.
Limited, as we are, by the narrow scope of common-law certiorari review, we cannot conclude that the trial court erred in upholding the commission's revocation of Sanders's business license. Consequently, the trial court's judgment is affirmed.
APPELLANT'S MOTION TO STRIKE GRANTED; AFFIRMED.
HORNSBY, C.J., and HOUSTON, KENNEDY and COOK, JJ., concur.
ALMON, J., concurs in result.
[1] Evelyn Sanders, with her father, Napoleon Johnson, had owned and operated the Salt N Pepper Lounge since 1990.
[2] Section 5-13 provides:
"Should any person be found to be operating any business in violation of zoning regulations or in an illegal manner or in such a manner as to be detrimental to public morals or health, or so as to constitute a nuisance, he shall be guilty of a misdemeanor and, in addition, the board of commissioners shall have the right to revoke the license for any such business."
[3] Section 5-14 provides:
"The following procedure shall govern the manner in which any license shall be revoked:
"(1) The board of commissioners shall, on its own initiative or upon the oral or written complaint of one (1) or more persons that any licensee in the city or within the police jurisdiction thereof, is operating any business in an illegal manner or in such a manner as to be detrimental to public morals or health, or so as to constitute a nuisance, give at least five (5) days' notice in writing to be served on such licensee, or an agent or officer thereof, requiring such licensee to appear before the board at a time and place specified in the notice for the purpose of showing cause, if any, why the license of such licensee should not be revoked. The notice shall specify the grounds upon which such revocation is proposed.
"(2) At the hearing provided for in subsection (1) above, such licensee shall have the right to introduce witnesses and evidence in his behalf; and the board shall hear all witnesses and evidence in support of the revocation of such license.
"(3) If after the hearing, a majority of the board shall be of the opinion that such licensee is operating, or has within six (6) months operated, such business in an illegal manner or in such a manner as to be detrimental to public morals or health, or as to constitute a nuisance, then by resolution, the board shall forthwith revoke the license of such licensee. No refund of any revoked license shall be made.
"(4) If after receiving such written notice, such licensee, or a duly authorized representative thereof, shall fail to appear before the board at the time and place fixed for the hearing or to which the same has been continued, then the board shall hear and consider evidence in support of the proposed revocation, and shall have the right to take the action authorized in subsection (3) above."
[4] On certiorari review, the scope of the trial court's inquiry is restricted to the record made before the commissioners. Exparte City of Tuskegee, 447 So.2d 713, 715 (Ala. 1984); City ofDothan Personnel Bd. v. Herring, 612 So.2d 1231, 1232
(Ala.Civ.App. 1992). Therefore, Sanders's motion to strike from the record the transcript of the December 21, 1992, hearing on her request for a preliminary injunction is granted.
[5] This statement refers to a citation and fine assessed against Sanders by the Alabama Alcoholic Beverage Control Board for allowing a strip dancer to perform at the lounge.