MURDOCK, Justice.
 

 Dan Fox, Ken Guffey, Paul Jones, Phil Kramer, Charlie Lifer, Randy Mearse, Coleman Sanders, Floyd Smith, and Danny Vaughn, police officers for the City of Huntsville Police Department (“the officers”), appeal from a denial of their petition for a common-law writ of certiorari filed against the City of Huntsville (“the City”) in a payroll dispute. We reverse.
 

 I. Facts and Procedural PListmy
 

 At the time of the events in question, the officers were patrol-car police officers. Beginning around January or February 2002, the officers were regularly assigned traffic-patrol duties, which included issuing a certain number of traffic tickets and performing traffic-flow services for funerals in the Huntsville area. In April 2002, the officers filed a grievance against the City asserting that they were performing traffic task force (“TTF”) duties without receiving the mandatory five percent increase in pay that TTF officers receive for performing their special duties.
 
 [1]
 

 The chief of police for the City, Compton Owens, responded to the grievance on April 23, 2002, with a written denial, in which he explained that in his view the officers were not entitled to the five percent pay increase because “[e]nforcement of vehicle and traffic laws is a requirement for all police officers without regard to where they are assigned,” whereas TTF officers receive extra pay because they are
 
 *1231
 
 deemed by Chief Owens to be in a “special assignment capacity” under City of Huntsville Ordinance No. 97-216, § 8.7(A). Section 8.7(A) provides, in pertinent part:
 

 “Police Officers,
 
 while nerving at the direction, of the Chief of Police in a, special assignment capacity
 
 to Criminal Investigation Division, Internal Affairs Division, Special Response, Bomb Squad,
 
 or other comparable assignment as determined by the Chief of Police,
 
 shall receive a five (5) percent higher rate of pay than the established rate of pay for the employee(s) concerned.”
 

 (Emphasis added.)
 

 The officers appealed Chief Owens’s decision to the City’s personnel committee (“the personnel committee”), maintaining that, if they were going to be assigned traffic-patrol duties at specified times, they should be considered to be on special assignment and therefore were entitled to receive the same rate of pay as TTF officers. For its part, the City contended that the officers’ grievance constituted an impermissible challenge to a validly adopted ordinance. Section 14.1(B)(1) of the Personnel Policies and Procedures Manual for the City (“the manual”) provides that “[a] grievance shall not be filed to,” among other things, “contest the validity of an adopted, approved ordinance or a properly enacted resolution of the City Council.” City of Huntsville Ordinance No. 94-375 (Personnel Policies and Procedures Manual), § 14.1.
 

 The personnel committee heard arguments, testimony, and accepted written evidence in the course of the grievance proceeding. On February 20, 2003, the personnel committee issued its decision, stating, in pertinent part:
 

 “The Personnel Committee unanimously concludes there is sufficient evidence to support your grievance. Ordinance 97-216 states that Police officers while serving at the direction of the Chief of Police in a Special Assignment shall receive Special Assignment Pay. The Personnel Committee by Ordinance 9[7]-216 does not have the authority to grant you Special Assignment Pay, nor does the Personnel Committee have the authority to grant you any retroactive pay. The Personnel Committee recommends that the Chief of Police re-evaluate his policy of Special Assignment Pay to the Traffic Task Force to make sure it is equitable to those officers who are performing Traffic Task Force Assignments or duties.”
 

 On March 6, 2003, the officers appealed the decision of the personnel committee to the Huntsville City Council (“the city council”), contending that the personnel committee erred in determining that it did not have the power to order the pay increase for the officers. The city council, pursuant to the grievance procedures spelled out in the manual, reviewed all the evidence from the personnel committee grievance hearing and received some additional testimony. The city council issued its decision on December 11, 2003, stating, in pertinent part:
 

 “[T]he City Council, by majority vote on December 4, 2003,
 
 modified the decision of the Personnel Committee.
 
 The City Council determined that
 
 the grievance contests the validity of an adopted, approved ordinance
 
 or a properly enacted resolution of the City Council. Ordinance No. 97-216, upon which your grievance is based, gives the Chief of Police the authority and discretion to grant special assignment pay under the circumstances complained of in your grievance. Accordingly, Section 14.1(B)(1) of the Personnel] Policies and Procedures Manual, as amended, bars your grievance.”
 

 There is no statute or ordinance specifying a method of appealing an employment
 
 *1232
 
 decision by the city council. Accordingly, the officers sought review of the city council’s decision by filing a petition for a common-law writ of certiorari in the Madison Circuit Court on June 8, 2004. The officers contended that the city council had impermissibly substituted its judgment for that of the personnel committee in ruling that their grievance was barred by § 14.1(B)(1) of the manual. Following the submission of briefs and two hearings at which oral argument was presented, the circuit court issued a written decision on April 20, 2006. The circuit court emphasized the limited nature of the review available on a petition for a common-law writ of certiorari, and it agreed with the officers that they were not challenging the validity of Ordinance No. 97-216. The circuit court concluded, however, that the city council “ ‘adopted’ the judgment of the personnel committee rather than substituting its judgment for that entity.” Because “[t]he Personnel Committee denied the petitioning officers’ grievance and the [City] Council affirmed the decision of the Personnel Committee,” the circuit court concluded that it lacked “the statutory authority to quash the decision made by the City Council.”
 
 [2]
 
 The officers appeal from that decision.
 

 II. Standard of Review
 

 “‘Alabama law is clear that, in the absence of a right of appeal, a party seeking review of a ruling by an administrative agency may petition the circuit court for a common law writ of certiora-ri.’ ”
 
 Ex parte Boykins,
 
 862 So.2d 587, 593 (Ala.2002) (quoting
 
 State Personnel Bd. v. State Dep’t of Mental Health & Retardation,
 
 694 So.2d 1367,1371 (Ala.Civ.App.1997)).
 
 See also Hardy v. Birmingham Bd. of Educ.,
 
 634 So.2d 574, 576 (Ala.Civ.App.1994) (explaining that “where an applicable statute provides no right of appeal and no statutory certiorari review, the only means of review is the common law writ of certiorari”).
 

 “ ‘[T]he standard of review for certio-rari limits the scope of review to questions of law and does not extend to review of the weight and preponderance of the evidence.’
 
 Parker v. Reaves,
 
 531 So.2d 853 (Ala.1988). Thus, ‘if there is any legal evidence to support the decision of the lower tribunal, such is conclusive on the reviewing court.’
 
 Lovelady v. Lovelady,
 
 281 Ala. 642, 206 So.2d 886 (1968). In other words, the only question for the reviewing court is ‘whether the evidence will justify the finding [of the lower tribunal] as a legitimate inference from the facts proved regardless of whether such inference would or would not have been drawn by the appellate tribunal.’
 
 Alabama Electric Cooperative v. Alabama Power Co.,
 
 278 Ala. 123, 126, 176 So.2d 483, 485 (1965).”
 

 Sanders v. City of Dothan,
 
 642 So.2d 437, 440 (Ala.1994). Furthermore, because the circuit court’s review on a common-law writ of certiorari was limited to the record before the city council,
 
 see, e.g., Sanders,
 
 642 So.2d at 440 n. 4, this Court reviews the circuit court’s decision de novo.
 

 III. Analysis
 

 The officers contend that the circuit court erred in ruling that the city council in effect “adopted” the ruling of the personnel committee. They argue that the city council in fact substituted its own judgment for that of the personnel committee, which the guidelines in the manual specifically prohibit it from doing. The
 
 *1233
 
 City argues that those same guidelines authorize the city council, by a majority vote, to modify the decision of the personnel committee in whole or in part, which, the City argues, is what the city council did. Ultimately, according to the City, the result reached by the city council was the same as that reached by the personnel committee, so the city council “essentially affirmed the decision of the Personnel Committee.” City’s brief, p. 21.
 

 Section 14.2 of the manual provides the guidelines under which the city council reviews an appeal from the personnel committee:
 

 “The [City] Council shall consider the record on appeal and any supplemental testimony presented at the hearing, together with the arguments of each party made at the hearing, and may question the parties concerning any relevant matter. A majority vote of those members elected to the City Council is required in order to alter a decision of the Personnel Committee. If the City Council is unable, by a majority of those members elected to the [City] Council, to alter the decision of the Personnel Committee, then the decision of the Personnel Committee shall stand unmodified. The [City] Council shall render a decision within fourteen (14) days after the hearing, either upholding the [Personnel] Committee’s decision or modifying it in part or in full. The [City] Council shall state the reason(s) for any modification of the Personnel Committee’s decision and shall give specific instructions, in writing, as to the steps to be taken to carry out its decision.
 

 “The Standard of Review
 
 before the City Council shall be
 
 whether the record
 
 before the Personnel Committee, as it may be supplemented before the [City] Council,
 
 contains evidence supporting the findings of the Personnel Committee.
 
 Determination of the weight and credibility of the evidence before the Personnel Committee is for the [Personnel] Committee, and not the [City] Council, to decide, but the [City] Council may consider the weight and credibility of testimony actually presented before the [City] Council in rendering any decision on the grievance. The [City] Council may not substitute its judgment for that of the Personnel Committee as long as there is sufficient evidence in the record or in supplemental form to support the Personnel Committee’s findings and decision.”
 

 (Emphasis added.)
 

 It is clear from the quoted portion of § 14.2 of the manual that the city council does possess the authority to amend, by a majority vote, in whole or in part the personnel committee’s decision. It is also clear, however, that the city council’s ability to modify the personnel committee’s decision is limited by the standard of review imposed upon the city council. If sufficient evidence exists in the record to support the finding of the personnel committee, then the city council may not substitute its judgment for that of the personnel committee as to that finding.
 

 The personnel committee explicitly determined that the officers presented sufficient evidence to support their grievance that being assigned traffic-patrol duty at specified times constituted “a special assignment” that should entitle them to receive “special assignment pay.” The personnel committee declined to award the salary-related relief requested by the officers, however, because of its conclusion, as a matter of law, that it had no authority to do so. For its part, the city council concluded that the officers’ grievance did not even fall within the types of grievances allowed under § 14.1(B)(1) of the manual, citing the prohibition in that section of
 
 *1234
 
 grievances “to contest the validity of an adopted, approved ordinance or a properly enacted resolution of the City Council.”
 

 In actuality, however, the officers were not
 
 challenging the validity
 
 of § 8.7(A) of Ordinance No. 97-216, which authorizes a five percent pay increase for any police officer placed in a “special assignment capacity” by the chief of police. To the contrary, they were asking that the ordinance be
 
 enforced
 
 to their benefit. The officers contended that being assigned to traffic-patrol duty at specified times when it is not within the regular duties of a vehicle patrol officer is akin to being on the TTF, a designated “special assignment.”
 

 The circuit court concluded that even though the city council had incorrectly categorized the officers’ grievance as a challenge to the validity of the ordinance, the court had no authority to do anything other than affirm that decision because, it reasoned, the city council had reached the same
 
 result
 
 as had the personnel committee and therefore, in effect, had “ ‘adopted’ the judgment of the personnel committee rather than substituting its judgment for that entity.” The circuit court erred in this reasoning. Although the personnel committee determined that there was sufficient evidence to support the officers’ grievance, the city council’s modification of the personnel committee’s decision never even addressed this issue and therefore did not implicate the deferential standard of review found in § 14.2 of the manual. (Nor did the city council address the other determination made by the personnel committee, i.e., that it had no authority to grant the officers’ requested relief.) Instead, the city council determined that § 14.1(B)(1) of the manual barred the officers’ grievance altogether.
 

 In other words, although it is true that the city council did not substitute its judgment for that of the personnel committee on the issue whether the officers’ presented sufficient evidence to sustain their grievance, it is true only because the city council did not reach this issue. It did not reach this issue because it mistakenly treated the officers’ grievance as an attempt to contest the validity of an ordinance, which was not permitted as a matter of law, rather than as an attempt to enforce the ordinance, which it plainly was.
 

 A common-law writ of certiorari is available to “correct errors of law apparent on the face of the record.... [T]he only matter to be determined is the quashing, or affirmation, of the proceedings brought up for review.”
 
 Jefferson County v. Berkshire Dev. Corp.,
 
 277 Ala. 170, 173, 168 So.2d 13, 16 (1964). It was legal error
 
 for
 
 the city council to foreclose any determination on the officers’ grievance by categorizing it as a challenge to the validity of an ordinance. Once the circuit court reached this conclusion, the proper course of action was to grant the writ and quash the proceedings below because the city council never made a determination about the sufficiency of the evidence concerning the officers’ grievance.
 

 Accordingly, because the circuit court erroneously affirmed the proceedings before the city council, we reverse its judgment and remand the case with the instruction that the circuit court grant the writ to allow the city council to further consider the officers’ grievance.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . As a general rule, TTF officers use motorcycles to perform their duties.
 

 [2]
 

 .
 
 Counsel for both sides stipulated in the circuit court that Chief Owens had accepted the recommendation of the personnel committee by limiting TTF officers' pay to the same rate as other police officers' pay.