BEATTY, Justice.
Petition by United Steelworkers of America, Local Union 7533; Calvin Smith; and Vernon S. Osborne, petitioners, for writ of certiorari to the Circuit Court of Jefferson County, to review that court’s finding of contempt of court.
A collective bargaining agreement between Dixie Electrical Manufacturing Company (“Dixie Electrical”) and United Steelworkers of America, Local Union 7533, expired at or near the end of April 1987, whereupon Local Union 7533 went on strike against Dixie Electrical and established a picket line at Dixie Electrical’s plant. Smith and Osborne were members of that local union.
On May 1, 1987, Dixie Electrical filed a complaint in the Jefferson Circuit Court, seeking injunctive relief and damages against United Steelworkers of America; United Steelworkers of America, Local Union 7533; Osborne; Smith; and other persons. On that same date, the circuit court issued a temporary restraining order restraining the national union, the local union, and certain individuals, including Smith and Osborne, from certain acts. Thereafter, on May 12, 1987, the circuit court issued a preliminary injunction substantially following the temporary restraining order.
On June 12, 1987, Dixie Electrical filed its verified petition for rule nisi. Following a four-day hearing on this petition, the trial court, on August 19, 1987, found Smith, Osborne, and Local Union 7533 guilty of contempt by violating the temporary restraining order and the preliminary injunction. Smith and Osborne were each sentenced to two days in the Jefferson County jail; however, the sentences were suspended on the condition that they not be found guilty of any additional violations occurring after August 14, 1987, or violations of other orders. Local Union 7533 was found guilty of:
“participating in, through the actions of its officers and members, and condoning the violations of the Court’s orders which resulted in damages to tires, a broken window and certain corporate equipment inside the office in which the window was broken. The Court finds the damages to the tires to be FIVE HUNDRED THIRTY AND 58/100 DOLLARS ($530.58), the damages to one broken window to be ONE HUNDRED AND ONE AND 80/100 dollars ($101.80), and the damage to the corporate equipment to be SIX HUNDRED NINETY THREE AND 33/100 DOLLARS ($693.33). ... The Court orders the Defendant, United Steelworkers of America, Local 7533, to pay, to the Plaintiff within 30 days of the date of this Order, the amount of ONE THOUSAND THREE HUNDRED TWENTY FIVE AND 71/100 dollars ($1,325.71).”
The petitioners contend that there was no legal evidence on which any of them could be found guilty of contempt. Local Union 7533 also questions, on due process grounds, the trial court’s failure to grant its motion to dismiss the petition for a rule nisi, as well as its liability in damages.
The certiorari standard of review is whether the law was properly applied and whether the ruling was supported by any legal evidence. Marshall Durbin & Co. of Japser, Inc. v. Environmental Manag *34 ement Commission, 495 So.2d 79 (Ala.Civ.App.1986); Smith v. Smith, 380 So.2d 897 (Ala.Civ.App.1980). See also International Molders & Allied Workers Union v. Aliceville Veneers Division, Buchanan Lumber Birmingham, 348 So.2d 1385 (Ala.1977) (no evidence to sustain the grant of a preliminary injunction).
According to the petitioners, the law requires that a union’s liability for contempt be based on evidence that the union authorized, participated in, or ratified, the contemptuous acts. Cited as authority for this proposition are NAACP v. Claiborne Hardware Co., 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), and our own decision in United Steelworkers of America AFL-CIO-CLC v. O’Neal, 437 So.2d 101 (Ala.1983). Claiborne was not a contempt case, but concerned a tort action brought by a number of merchants against the NAACP and certain individuals to obtain an injunction and damages on account of a boycott practiced against the plaintiff. The United States Supreme Court held that the conduct complained of, being peaceful and nonviolent, could not be used by the state of Mississippi as a basis for damages or be suppressed by injunction. It is significant that the United States Supreme Court, in determining that no judgment could be upheld in Claiborne, stated the following, 458 U.S. at 924-25, 102 S.Ct. at 3431:
“Respondents’ supplemental brief also demonstrates that on the present record no judgment may be sustained against most of the petitioners. Regular attendance and participation at the Tuesday meetings of the Claiborne County Branch of the NAACP is an insufficient predicate on which to impose liability. The chancellor’s findings do not suggest that any illegal conduct was authorized, ratified, or even discussed at any of the meetings. The Sheriff testified that he was kept informed of what transpired at the meetings; he made no reference to any discussion of unlawful activity. To impose liability for presence at the weekly meetings of the NAACP would — ironically — not even constitute ‘guilt by association,’ since there is no evidence that the association possessed unlawful aims. Rather, liability could only be imposed on a ‘guilt for association’ theory. Neither is permissible under the First Amendment.” (Footnotes omitted.) (Emphasis in original.)
That statement concerning the basis for a finding of liability of the association (or union) was followed by an even more pointed requirement for imposing liability upon the association itself, 458 U.S. at 930-32, 102 S.Ct. at 3435:
“The chancellor made no finding that Charles Evers or any other NAACP member had either actual or apparent authority to commit acts of violence or to threaten violent conduct. The evidence in the record suggests the contrary. Aaron Henry, president of the Mississippi State Conference of the NAACP and a member of the Board of Directors of the national organization, testified that the statements attributed to Evers were directly contrary to NAACP policy. Record 4930. Similarly, there is no evidence that the NAACP ratified — or even had specific knowledge of — any of the acts of violence or threats of discipline associated with the boycott.
“To impose liability without a finding that the NAACP authorized — either actually or apparently — or ratified unlawful conduct would impermissibly burden the rights of political association that are protected by the First Amendment. As Justice Douglas noted in NAACP v. Overstreet, 384 U.S. 118, 86 S.Ct. 1306, 16 L.Ed.2d 409, dissenting from a dismissal of a writ of certiorari found to have been improvidently granted:
“ ‘To equate the liability of the national organization with that of the Branch in the absence of any proof that the national authorized or ratified the misconduct in question could ultimately destroy it. The rights of political association are fragile enough without adding the additional threat of destruction by lawsuit. We have not been slow to recognize that the protection of the First Amendment bars subtle as well as obvious devices by which *35 political association might be stifled.
[[Image here]]
We are mindful that these principles are at variance with earlier statements contained in Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 556, 85 L.Ed. 836 (1941): “It is true of a union as of an employer that it may be responsible for acts which it has not expressly authorized or which might not be attributable to it on strict application of the rules of respondeat superior.”
We recognize, moreover, the limiting language used in United Mine Workers of America v. Gibbs, 383 U.S. 715, 736-37, 86 S.Ct. 1130, 1144-45, 6 L.Ed.2d 218 (1966), when it discussed § 6 of the Norris-La Guardia Act, which dealt with the liability of organizations involved in a labor dispute:
“We held in United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 403, 67 S.Ct. 775, 780, 91 L.Ed. 973, that
“ ‘whether § 6 should be called a rule of evidence or one that changes the substantive law of agency * * * its purpose and effect was to relieve organizations * * * and members of those organizations from liability for damages or imputation of guilt for lawless acts done in labor disputes by some individual officers or members of the organization without clear proof that the organization or member, charged with responsibility for the offense, actually participated, gave prior authorization, or ratified such acts after actual knowledge of their perpetration.’
“Shortly thereafter, Congress passed the Labor Management Relations Act, which expressly provides that for the purposes of that statute, including § 303, the responsibility of a union for the acts of its members and officers is to be measured by reference to ordinary doctrines of agency, rather than the more stringent standards of § 6.... The driving force behind § 6 and the opposition to § 303, even in its limited form, was the fear that unions might be destroyed if they could be held liable for damage done by acts beyond their practical control. Plainly, § 6 applies to federal court adjudications of state tort claims arising out of labor disputes. ...” (Emphasis added.)
Even so, those earlier pronouncements preceded the Claiborne decision, which in itself was a federal review of a state injunction and damages claim, and which held that the state court could not impose liability for unlawful conduct upon an association, albeit a labor organization, for the conduct of its individual members without a finding based upon evidence that it authorized, participated in, or ratified the misconduct complained of.
Earlier pertinent decisions of this Court, i.e., Ex parte Morehead, 281 Ala. 71, 199 So.2d 82 (1967), and Ex parte Amalgamated Clothing Workers of America, 286 Ala. 191, 238 So.2d 544 (1970), are consistent with Claiborne and O’Neal, which we deem the contemporary authority in this state. In O’Neal, a non-union employee of a struck plant brought an action against a union to recover damages for alleged acts of violence practiced upon him when he crossed a picket line and for other damages. In reversing a judgment against the union itself, this Court stated:
“First, O’Neal asserts that the jury could have attributed the acts of other non-joined parties to United Steelworkers under the doctrine of respondeat superior. To buttress this argument, O’Neal asserts that the union’s failure to repudiate acts of violence, in addition to providing legal counsel for those charged with strike related misconduct, served as a ratification of the violence. We cannot agree.
“For O’Neal to recover under such a theory he must show the union authorized or ratified acts of violence.... ”
We do not attach significance to the fact that O’Neal involved a tort action to recover damages while the instant case deals with a contempt proceeding involving in-junctive relief and damages. Claiborne, on which we have relied in O’Neal and presently, also involved injunctive relief and damages.
*36 Having examined the record, we find that it does disclose evidence that the union itself authorized and participated in the unlawful acts of individual members.
Although the president of the local union was present on several occasions at the strike site, and there was evidence that he had participated in acts prohibited by the temporary injunction, nevertheless, he was exonerated when the trial court granted a directed verdict in his favor.
On the other hand, the evidence did disclose that the union members unanimously voted to strike; the union itself maintained pickets at the plant entrance; the union maintained a tent for the strikers as protection against inclement weather; the union provided picket captains for the picket lines; the union held regular strike meetings; and the union provided strike funds, furnished by the international union, to assist with the personal needs of striking local members in need. See Ex parte Morehead and Ex parte Amalgamated Clothing Workers of America, supra.
Petitioners also contend that there was insufficient evidence to authorize a finding of contempt against Smith and Osborne for violating the temporary and preliminary injunctions, which prohibited, inter alia,
“(a) Picketing in numbers greater than three (3) within five hundred (500) feet of any given gate at any given time.
“(b) Threatening any person with violence or bodily harm if such person enters or leaves the premises occupied by the plaintiff or does any business with Plaintiff.
“(c) Engaging in any acts of violence of any kind against any person entering or leaving the premises occupied by the Plaintiff, doing any business of any kind with the Plaintiff or performing services for and on behalf of the Plaintiff.
“(d) Trespassing on the premises occupied by the Plaintiff.
“(e) Carrying clubs, guns, or other dangerous instruments on the picket line at the Plaintiffs premises.
“(f) Spreading tacks on or near the entrances to the Plaintiffs premises.
“(g) Trespassing on the premises of the employees of the Plaintiff.
“(h) Harassing the employees of the Plaintiff and/or their families either at the premises of the Plaintiff or at any other place.”
Witness Carl Brown identified Calvin Smith as the person who threw three pieces of small gravel into his car as he was proceeding out of a company gate. One of these hit the back of his head and another hit one of his shoulders. Smith was also described as having pulled on the door handle and hollered for Brown to “get out of the car.” As Brown drove off, he testified, Smith ran behind Brown’s car beating the louvers on the rear windshield, damaging them. Brown testified that the damage was approximately $150.
Ms. Linda Berry testified to obscenities directed at her by two men at the plant fence, and of later being struck on the cheek by a rock thrown in her direction. She identified a photograph of the two men who had verbally abused her. One of these was later identified as Smith.
Mr. Charles Thompson witnessed the incident concerning Carl Brown’s car and identified Smith as the perpetrator.
Vernon Osborne was identified as a man on the picket line lighting and throwing firecrackers into the back of a pickup truck, as well as other vehicles, coming out of the company gate. Osborne was also observed yelling at a woman driving into the plant and slapping the back of her car.
These incidents of threats and harassment were sufficient legal evidence under our scope of review on which to base a finding of contempt on the part of Smith and Osborne. Marshall Durbin, supra. The evidence of damage to tires, windows, and corporate equipment during the demonstrations was also established, and, because of the participation of the union itself, as previously shown, it was not improper to impose liability upon it for those damages. See Lightsey v. Kensington Mortgage & Finance Corp., 294 Ala. 281, 315 So.2d 431 (1975).
*37 Additionally, we have examined the respondent’s petition for a rule nisi and find that, in describing 17 incidents in violation of the order of May 1, 1987, and 21 incidents in violation of the order of May 12, 1987, the due process requirements of notice were satisfied.
Accordingly, under the law and the evidence, the order of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX and HOUSTON, JJ„ concur.
ALMON, J., concurs in the result.