CRAWLEY, Judge.
James Hurst was employed by the Department of Mental Health and Mental Retardation (“the Department”) as a mental health worker at Bryce Hospital for 14 years. In April 1994, the Department dismissed him from his employment, based upon charges that he had sold marijuana to a patient and that he had refused to provide a urine sample for a drug test.
Hurst appealed his dismissal to the State Personnel Board (“the Board”). The Board appointed a hearing officer to conduct an administrative hearing. At the hearing, the Department presented evidence that on January 15,1994, Bryce Hospital employee Hur-sey Wilson found J.A and two other Bryce patients smoking cigarettes in the restroom. During a search for contraband smoking materials, Wilson discovered marijuana in J.A’s possession. J.A told Wilson that he had purchased the marijuana from James Hurst.
At the request of James F. Reddoch, Jr., director of Bryce Hospital, Lt. Jerry Boyd of the Bryce Hospital Police Department conducted an internal investigation of the alleged sale of marijuana. Boyd testified that J.A. told him that he (J.A.) had bought the marijuana from Hurst for a female patient, T.J. Boyd said that T.J. admitted that she had given J.A money to buy marijuana for her.
According to Boyd, J.A also said that there were two other Bryce patients, A.W. and C.F., who were witnesses to the sale. When Boyd questioned AW., that patient corroborated J.A.’s version of the sale and *1370 named Hurst as the seller. C.F. refused to reveal any information to Boyd. Several months later, however, C.F. told Larry Pate, a Bryce employee, that he had seen Hurst sell marijuana to J.A. After Hurst was dismissed from his employment, A.W. informed Glenda Lee, another Bryce Hospital employee, that he had seen Hurst sell the contraband to J.A.
None of the Bryce patients testified at the evidentiary hearing. All the testimony concerning the alleged sale of marijuana came from Bryce employees Hursey Wilson, Jerry Boyd, Larry Pate, and Glenda Lee.
Boyd testified that on January 19, 1994, four days after the marijuana was found, he asked Hurst to submit a urine sample for drug testing, pursuant to Department policy number 79-25. That policy states, in pertinent part, the following:
“7. Testing of Employees Based on Reasonable Suspicion:
“(a) If there is evidence sufficient to constitute a reasonable suspicion, any employee who is believed to have consumed a controlled substance may be required by the Appointing Authority or designee to take a toxicological test to determine the usage of controlled substances.
“(b) Reasonable suspicion is the suspicion, based on specific facts available to the Appointing Authority or designee and any rational inferences that may be drawn from these facts in light of their experience, that any employee has consumed controlled substances.
“8. Disciplinary Action:
“(a) Employees who ... refuse to be tested shall be recommended for dismissal from employment....”
Lt. Boyd testified that he requested the drug test as part of his investigation into the sale of marijuana to JA.. He also said that he thought it was reasonable to infer that if a person were selling marijuana he might also be consuming it. When Boyd asked Hurst to submit to the drug test, he had the following information: (1) Hurst had a prior drug offense arrest; (2) Hurst had recently returned from a treatment center for drug and alcohol abuse; and (8) Hurst had been the subject of previous allegations relating to the use or sale of alcohol and drugs at Bryce Hospital. Hurst refused to submit to the drug test.
Upon completion of his investigation, Lt. Boyd concluded that there was insufficient evidence to substantiate the allegation that Hurst had sold marijuana to J.A. Boyd reached that conclusion, he said, because all the witnesses to the alleged drug transaction were Bryce patients and the statements of those witnesses contained inconsistencies concerning the location of the sale and the amount of money transferred in the sale.
Bryce Hospital Director James F. Red-doch, Jr., testified that the purpose of the Department’s drug testing policy is to prevent employees from working under the influence of controlled substances. In deciding whether to dismiss Hurst, Reddoch reviewed Lt. Boyd’s investigative file, including the transcripts of Boyd’s witness interviews, and reached a conclusion different from Boyd’s. Reddoch decided that there was “credible evidence to base a decision that the act with which Mr. Hurst was charged had occurred.” Reddoch also determined that there was a reasonable suspicion of drug use by Hurst so as to authorize a request that Hurst submit to a drug test. Reddoch gave his opinion that “experience would lead one to think or to conclude that sale [of drugs] and use [of drugs] oftentimes go together.”
The hearing officer determined that there was insufficient evidence to support' the charge that Hurst had sold marijuana to a patient and that there were no legal grounds for requesting a urine sample from Hurst for a drug test. The hearing officer found that Boyd’s request for a drug test “was not based on any suspicion that Hurst had consumed a controlled substance, [or] that Hurst had reported to work under the influence of alcohol or a controlled substance.” Instead, the hearing officer was “convinced that Officer Boyd’s request ... was merely an attempt to buttress the unsubstantiated charge that Hurst had sold a controlled substance to a patient.” This, the hearing officer concluded, was an impermissible reason for requesting a drug test. The hearing officer recommended that Hurst be reinstated. The *1371 Board accepted the hearing officer’s findings of fact and conclusions of law and ordered that Hurst be reinstated with back pay.
The Department appealed the Board’s decision to the Tuscaloosa Circuit Court. The circuit court determined that the Alabama Administrative Procedure Act (AAPA) did not give the Department a right of appeal, and it dismissed the appeal. At the Department’s request, however, the court treated the appeal as a petition for a writ of certiora-ri.
On certiorari review, the circuit court determined that, as to the issue of the alleged drug sale, there was sufficient evidence to support the Board’s factual finding that Hurst did not sell marijuana to a Bryce patient. On the drug testing issue, however, the circuit court held that “some of the [Board’s] factual findings are not supported by the evidence and some of the Board’s conclusions of law are not supported by the law.”
The circuit court decided that the following factual finding by the Board was not supported by the evidence: Lt. Boyd did not have reasonable suspicion to believe that Hurst was using drugs and Boyd requested a urine sample from Hurst merely to buttress the charge that Hurst had sold marijuana to a patient. The circuit court determined that the evidence did support a finding that Lt. Boyd requested the drug test because he suspected that Hurst was using drugs. The court held that the request for the drug test was, therefore, permissible, and that Hurst’s refusal to submit to the test was grounds for his dismissal. The circuit court set aside the Board’s order reinstating Hurst and upheld the Department’s decision to terminate Hurst. The Board appealed to this court.

The Propriety of Certiorari Review

The Board contends that the circuit court erred by treating the Department’s request for review as a petition for a writ of certiorari. It argues that §§ 41-22-3(7) and 41-22-20(a), Ala.Code 1975, part of the AAPA, reveal the legislature’s intent to prohibit one state agency from seeking judicial review of the ruling of another state agency. Therefore, the Board insists, allowing an agency to obtain judicial review by means of a writ of certiorari subverts the legislative intent of the AAPA
Those arguments were not made below. The Board did not challenge the propriety of certiorari review in the circuit court. Generally, arguments not presented to the trial court are not preserved for review and will not be addressed on appeal. Wesi Town Plaza Assocs., Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290, 1294 (Ala.1993); McAliley v. McAliley, 638 So.2d 10 (Ala.Civ.App.1994).
The Department did not cross-appeal the dismissal of its appeal to circuit court. Normally, we would not address the issue of whether the appeal should have been dismissed. However, the Board has made ap-pealability under the AAPA an issue by arguing that if judicial review is not available pursuant to the AAPA, then it is also not available pursuant to a writ of certiorari. Thus, the issues of appealability under the AAPA and certiorari review are intertwined, and they present jurisdictional matters that are not subject to waiver. See Hayden v. Harris, 437 So.2d 1283 (Ala.1983); Davis v. Townson, 437 So.2d 1305 (Ala.Civ.App.1983).
Alabama law is clear that, in the absence of a right of appeal, a party seeking review of a ruling by an administrative agency may petition the circuit court for a common law writ of certiorari. See Ellard v. State, 474 So.2d 743 (Ala.Crim.App.1984), affirmed, 474 So.2d 758 (Ala.1985). See also Alabama Dep’t of Mental Health & Mental Retardation v. Kirby, 579 So.2d 675 (Ala.Civ.App.1991); Stewart v. Hilyer, 376 So.2d 727 (Ala.Civ.App.1979).
Certiorari will not issue, however, if a right of appeal is available. Ex parte Biddle, 258 Ala. 190, 61 So.2d 803 (1952). Therefore, in order to decide whether certio-rari review was appropriate in this case, we must determine whether the Department had a right of appeal under the AAPA.
Section 41-22-20 of the AAPA provides, in pertinent part, the following:
“(a) A person who has exhausted all administrative remedies available within the agency, other than rehearing, and who is *1372 aggrieved by a final decision in a contested case is entitled to judicial review under this chapter....
“(b) All proceedings for review may be instituted by filing notice of appeal or review and a cost bond with the agency to cover the reasonable costs of preparing the transcript of the proceedings under review, unless waived by the agency or the court on a showing of substantial hardship. A petition shall be filed either in the circuit court of Montgomery county or in the circuit court of the county in which the agency maintains its headquarters, or unless otherwise specifically provided by statute, in the circuit court of the county where a party other than an intervenor resides or if a party, other than an intervenor, is a corporation, domestic or foreign, having a registered office or business office in this state, then in the county of the registered office or principal place of business within this state.”
(Emphasis added.)
Section 41-22-3(7) defines “person” as “any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character other than an agency.” (Emphasis added.) The Board argues that the Department did not have the right to appeal under § 41-22-20(a) of the AAPA because it is an agency and, therefore, is not a “person.” That argument is correct; the Department had no right of appeal as a “person aggrieved.” However, the Department did have a right of appeal under the AAPA by virtue of the fact that it was a party to the administrative adjudication. Section 41-22-3(6) defines a “party” as
“[e]ach person or agency named or admitted as a party or properly seeking and entitled as a matter of right (whether established by constitution, statute, or agency regulation or otherwise) to be admitted as a party....”
The AAPA gives a right of appeal to two entities: “parties” and “persons aggrieved.” In Phoenix Ass’n, Inc. v. Cudzik, 641 So.2d 828 (Aa.Civ.App.1994), this court observed that Phoenix, a group protesting the renewal of Cudzik’s club liquor license, “was not a party to the [Mabama Acoholie Beverage Control] Board’s hearing.” 641 So.2d at 830. This court also observed that Phoenix “was not [a person] aggrieved by the decision of the Board.” Id. “Consequently,” this court concluded, “Phoenix would not have been entitled to appeal the renewal of Cudzik’s club liquor license had the Board voted to renew it.” Id. That conclusion recognizes, by negative implication, that one who is a party to an administrative hearing, is entitled to appeal an adverse decision.
The AAPA expanded the right of appeal, formerly available only to parties to an administrative proceeding, by establishing “standing” requirements for nonparties to appeal. The “person aggrieved” provision of § 41-22-20(a) “is designed to govern standing.” See K. Davis, 4 Administrative Law Treatise § 24:4 at 219 (1983).
“This court has consistently held that a plaintiff can be a ‘person aggrieved’ within the meaning of § 41-22-20, and therefore have standing to challenge an agency ruling, even if the plaintiff is not the subject of the ruling and the ruling does not directly regulate the plaintiff. See, e.g., State Health Planning & Dev. Agency v. AMI Brookwood Medical Center, 564 So.2d 54 (Ma.Civ.App.l989)(plaintiff hospitals had standing to challenge SHPDA grant of certificate of need [CON] to another hospital, even though plaintiffs were not applicants for a CON, because they alleged that construction of a new hospital would reduce their patient occupancy rate), reversed on other grounds, 564 So.2d 63 (Aa.1990); Springhill Hospitals, Inc. v. Alabama State Health Planning Agency, 549 So.2d 1348 (Ma.Civ.App.l989)(plaintiff hospital had standing to challenge grant of a CON to another hospital for purchase of gallstone-shattering machine because plaintiff alleged that competitor’s machine would cause it to lose gallstone patients).”
Medical Ass’n. of the State of Alabama v. Shoemake, 656 So.2d 863, 867 (Aa.Civ.App.1995).
It is evident that, by enacting § 41-22-20(a), the legislature intended to expand the right of judicial review in administrative proceedings to include nonparty “persons aggrieved.” We do not think the legislature *1373 thereby intended to constrict the right of judicial review to exclude “parties” who had always been entitled to that right.
In § 41-22-17, we find further support for our conclusion that any party to an administrative adjudication is entitled to appeal the adjudication to the circuit court. Section 41-22-17 provides that “any party to a contested case” may file an application for rehearing of the agency decision. The section further provides that if the agency does not enter an order within 30 days of the filing of the application for rehearing, the application is deemed denied by operation of law at the expiration of the 30-day period. This court has held that the applicant for rehearing (who is required by § 41-22-17(a) to be a party) must file a notice of appeal within 30 days of the decision on the application for rehearing in order to perfect a timely appeal of the agency decision. Davis v. Alabama Medicaid Agency, 519 So.2d 538 (Ala.Civ.App.1987).
We believe the legislature made apparent its intent to grant any party to an administrative adjudication the right to appeal when it provided a rehearing procedure for parties and established a time limit for parties to appeal from the denial of their applications for rehearing. The exclusion of a state agency from the definition of a “person,” therefore, does not affect the right of a state agency, if it is a party, to appeal under the AAPA.
We therefore reject the Board’s argument that the AAPA does not give a state agency like the Department a right to appeal an administrative decision. We hold that the Department, as a party to the adjudication, was entitled to judicial review under the AAPA. The circuit court erred by dismissing the Department’s appeal and by treating its request for review as a petition for writ of certiorari. That error was harmless, however, because applying either the certiorari standard of review or the AAPA standard of review would produce the same result in this case. See Ala.Code 1975, § 41-22-20(k)(5).

Certiorari Standard of Review

The Board argues that the circuit court erred by applying a “substantial evidence” standard on certiorari review of factual findings by the Board. “The certiorari standard of review is whether the law was properly applied and whether the ruling was supported by any legal evidence.” Ex parte United Steelworkers of America, Local Union 7533, 536 So.2d 32, 33 (Ala.1988), cert. denied, 490 U.S. 1046, 109 S.Ct. 1954, 104 L.Ed.2d 423 (1989) (emphasis added). “[I]f there is any legal evidence to support the decision of the lower tribunal, such is conclusive on the reviewing court.” Sanders v. City of Dothan, 642 So.2d 437, 440 (Ala.1994).
“[W]hen proceedings of a lower tribunal are reviewed on common-law writ of certio-rari the tribunal’s order should be sustained if it is supported by any substantial or legal evidence. In the context of common law writ of certiorari proceedings, substantial evidence means legal evidence. Thus, there must be some evidence presented to the lower tribunal which is competent and legal under the general rules of evidence....
[[Image here]]
“The appropriate inquiry then, on a common-law writ of certiorari review, is whether any legal evidence exists to support the lower tribunal’s ruling.”
Personnel Board of Jefferson County v. Bailey, 475 So.2d 863, 868 (Ala.Civ.App.l985)(emphasis in original) (citations omitted).
The circuit court determined that the evidence supported the Board’s factual finding that Hurst did not sell marijuana to a patient. That determination was correct because there was no legal evidence that would have supported a contrary finding. All the testimony regarding the alleged sale was hearsay. Although hearsay is admissible in an administrative proceeding, it cannot provide the sole basis for an administrative ruling. See Kid’s Stuff Learning Center, Inc. v. State Department of Human Resources, 660 So.2d 613 (Ala.Civ.App.1995); Edmondson v. Tuscaloosa County, 48 Ala.App. 372, 265 So.2d 154 (1972). See also Ala.Code 1975, § 41-22-13.

*1374
Reasonable Suspicion Drug Testing

The Board insists that the circuit court reweighed the credibility of Lt. Boyd and substituted its judgment for that of the Board on the issue of Boyd’s motivation for requesting the drug test. It appears that the Board is correct.
The Board found as a fact that when Lt. Boyd requested the drug test, he did not suspect that Hurst was a drug user. Instead, the Board found, Boyd wanted to use the test to bolster the charge that Hurst was a drug seller. The circuit court disagreed. It found as a fact that Lt. Boyd did suspect that Hurst was a drug user.
The common-law certiorari standard of review dictates that a reviewing court accept the facts as found by the lower tribunal if they are supported by any legal evidence. Here, the Board’s finding as to Lt. Boyd’s motivation for ordering the drug test was supported by some legal evidence. The circuit court therefore erred by substituting its judgment for that of the Board. See also Ala.Code 1975, § 41-22-20(k)(“[T]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact”). The error was harmless, however, because under the facts of this case Boyd’s subjective motivation for requesting the test was immaterial. Unlike State Personnel Dep’t v. Mays, 624 So.2d 194 (Ala.Civ.App.1993), this case does not turn upon a question of credibility, but upon a question of law.
Department policy number 70-25 states that “Reasonable suspicion is the suspicion, based on specific facts available to the Appointing Authority or designee and any rational inferences that may be drawn from these facts in light of their experience, that any employee has consumed controlled substances.” That policy adopts the definition of “reasonable suspicion” used by the United States Supreme Court in a line of cases beginning with Terry v. Ohio, 392 U.S. 1, 21, 27, 88 S.Ct. 1868, 1879, 1883, 20 L.Ed.2d 889 (1968).
The test for “reasonable suspicion” is an objective one. The Terry Court stated that in making the reasonable suspicion assessment, “it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search ‘warrant a man of reasonable caution in the belief that the action taken was appropriate?” Terry, 392 U.S. at 21-22, 88 S.Ct. at 1879-80. See also Scott v. United States, 436 U.S. 128, 136, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978), where the Court held:
“The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer’s action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.”
Alabama courts have also adopted an objective standard for Fourth Amendment search and seizure cases. In Ex Parte Scarbrough, 621 So.2d 1006 (Ala.1993), our supreme court held that “[a]s long as the police officer is doing only what is objectively authorized and legally permitted, the officer’s subjective intent in doing it is irrelevant.” 621 So.2d at 1010 (emphasis added). See also Powell v. State, 548 So.2d 590, 600 (Ala.Crim.App.1988), aff'd, 548 So.2d 605 (Ala.1989).
Whether or not an action is supported by reasonable suspicion involves a mixed question of law and fact, or an application of the law to the facts. See, e.g., Thompson v. Renting, 968 F.2d 756, 759 (8th Cir.1992); United States v. Campbell, 843 F.2d 1089, 1092 (8th Cir.1988); People v. Lewis, 82 N.Y.2d 839, 606 N.Y.S.2d 146, 626 N.E.2d 931 (1993); Salter v. North Dakota Dep’t of Transp., 505 N.W.2d 111 (N.D.1993). See generally State v. Hill, 690 So.2d 1201 (Ala.1996)(“The trial judge’s ruling in this case was based upon his interpretation of the term ‘reasonable suspicion’ as applied to an undisputed set of facts; the proper interpretation is a question of law.”).
“Disputes concerning the underlying factual circumstances present questions of fact, and the hearing officer’s findings on those facts will be overturned on appeal only if they are not supported by [the requisite quantum of] evidence. However, the ultimate conclusion of whether those facts *1375 meet the legal standard, rising to the level of a reasonable and articulable suspicion is a question of law which is fully reviewable on appeal.”
Salter v. North Dakota Dep’t of Transp., 505 N.W.2d at 112.
Although a mere “hunch” does not amount to reasonable, suspicion for an employee drug test, certainty is not required. American Federation of Gov’t Employees, AFL-CIO v. Roberts, 9 F.3d 1464, 1468 (9th Cir.1993). Reasonable suspicion may be based in whole or in part on hearsay information. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Irrespective of Lt. Boyd’s subjective intent, the following facts amount to “reasonable suspicion,” as a matter of law, that Hurst was using drugs: (1) Hurst had a prior drug offense arrest; (2) Hurst had recently returned from a treatment center for drug and alcohol abuse; (3) Hurst had been the subject of previous allegations relating to the use or sale of alcohol and drugs at Biyce Hospital; and (4) Hurst was named by three eyewitnesses to an alleged drug transaction as the seller of drugs. See Everett v. Napper, 833 F.2d 1507 (11th Cir.1987)(employer had reasonable suspicion to request a drug test for employee when fellow employee who was a confirmed drug dealer named employee as one who had bought drugs from him).
Although the circuit court erred by substituting its judgment for that of the Board on an underlying factual matter, that court reached the correct legal result: the Department had reasonable suspicion to request a urine sample from Hurst for a drug test, and Hurst’s refusal to submit to the test warranted his dismissal.
The judgment of the trial court is affirmed.
AFFIRMED.
YATES and MONROE, JJ., concur.
ROBERTSON, P.J., concurs in the result.