911 So.2d 739 (2004)
Merlin COLLINS
v.
ALABAMA DEPARTMENT OF CORRECTIONS.
CR-03-0285.
Court of Criminal Appeals of Alabama.
May 28, 2004.
Merlin Collins, pro se.
Charles Crook, gen. counsel, and Albert Sim Butler, asst. gen. counsel, Department of Corrections, for appellee.
BASCHAB, Judge.
The appellant, Merlin Collins, filed a petition for a writ of certiorari, arguing that the Alabama Department of Corrections ("DOC") had improperly classified him as a heinous offender. DOC responded, and the circuit court denied the petition, but ordered DOC to remove the designation of heinous from the appellant's *740 classification. After DOC filed a motion for clarification, the circuit court struck its previous order and denied the petition in its entirety. This appeal followed.
The appellant argues that the circuit court improperly struck its order in which it had granted the relief he had requested. However, before we can reach his argument, we must determine whether this court has jurisdiction to hear this appeal. For the reasons set forth herein, we conclude that the Alabama Court of Civil Appeals, rather than this court, has jurisdiction to hear this appeal.
The appellant alleges that he was previously in minimum custody classification; that, based on information included in a presentence investigation about the offense for which he was convicted, DOC subsequently classified him as a heinous offender; and that, because of that classification, he will not ever be eligible for placement in an honor camp or a work release program. However, inmates do not have a liberty interest in a particular custody or security classification. See Handley v. State, 549 So.2d 630, 631 (Ala.Crim.App.1989) (citing Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)); Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). "`[T]he classification scheme adopted by the Alabama prison system to determine the custody status of prisoners "is not arbitrary and capricious, but reasonable and appropriate."'" Hill v. State, 594 So.2d 246, 248 (Ala.Crim.App.1992) (quoting Monroe v. Thigpen, 932 F.2d 1437, 1441 (11th Cir.1991) (quoting in turn Hendking v. Smith, 781 F.2d 850, 852 (11th Cir.1986)), which holds that a prison regulation denying sex offenders minimum security status does not violate the Equal Protection Clause). "[C]ustody classifications in prison do not amount to matters in which the inmate has a constitutional right." Handley, 549 So.2d at 631. Therefore, the appellant has not shown that a liberty interest has been implicated in this case.[1]
In Ex parte Boykins, 862 So.2d 587 (Ala.2002), Boykins filed a petition for a writ of certiorari in which he asserted that DOC had improperly denied his request to receive incentive good time ("IGT"). The circuit court treated his petition as a petition for a writ of habeas corpus and dismissed it, and he appealed to this court. After we affirmed the circuit court's judgment, the Alabama Supreme Court granted his petition for a writ of certiorari
"to address the question whether the Court of Criminal Appeals properly affirmed the trial court's order of dismissal where the basis of the dismissal was the trial court's treatment of Boykins's petition for a writ of certiorari as a petition for a writ of habeas corpus."
Ex parte Boykins, 862 So.2d at 588. Because the opinion in Ex parte Boykins represented a departure from established procedures, we quote from it extensively.
In Ex parte Boykins, when reversing this court's judgment, the Alabama Supreme Court stated:
"The record reveals that in March 1973 Boykins was convicted of first-degree murder and was sentenced to 60 years' imprisonment. In September 1974, while working on a `road camp,' Boykins escaped. He remained a fugitive from 1974 until April 1995, when he was returned to the custody of the DOC. While on escape, Boykins pleaded guilty to another murder in Illinois. Subsequent *741 to his return to the custody of the DOC, Boykins requested eligibility to earn IGT. His requests were denied by the DOC because of its determination that Boykins failed to meet the criteria for receipt of IGT.
". . . .
"Boykins asserts that the conclusion by the Court of Criminal Appeals that the circuit court correctly treated his petition for a writ of certiorari as a petition for habeas corpus was incorrect. The basis for that conclusion was the Court of Criminal Appeals' recognition that a petition for habeas corpus is the proper means for testing whether the State has correctly calculated the duration of an inmate's incarceration. Breach v. State, 687 So.2d 1257 (Ala.Crim.App.1996); Swicegood v. State, 646 So.2d 158 (Ala.Crim.App.1993). However, Boykins argues that his petition does not question whether the State correctly calculated his sentence; instead, he argues that his petition sought to review an administrative determination by the DOC as to whether he was entitled to earn IGT. Boykins argues that because his petition sought review of an administrative decision rather than the vindication of a `liberty interest,' the Court of Criminal Appeals erred in determining that his petition was properly dismissed as a petition for a writ of habeas corpus.
". . . .
"The courts of this State have long recognized that the only purpose of the writ of habeas corpus is to afford relief against actual restraints upon liberty. State v. Speake, 187 Ala. 426, 427, 65 So. 840, 841 (1914)(`The writ of habeas corpus has been defined, or rather described, as "that legal process which is employed for the summary vindication of the right of personal liberty when illegally restrained."'); Powell v. State, 726 So.2d 735, 737 (Ala.Crim.App.1997)(`The sole function of habeas corpus relief is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose.'); Stinson v. State, 43 Ala.App. 257, 258, 188 So.2d 287, 288 (1966) (`The writ of habeas corpus is concerned solely with the lawfulness of the present holding of the petitioner.' (citing Adams v. State, 30 Ala.App. 487, 8 So.2d 219 (1942))); Williams v. State, 42 Ala.App. 140, 140, 155 So.2d 322, 323 (1963)(`"It should always be borne in mind that the applicant for the writ of habeas corpus is not entitled to the writ unless he is actually restrained of his liberty. . . . Mere moral restraint (such as a military arrest, confinement to quarters, or parole, for example), as distinguished from actual confinement, is generally insufficient to warrant issuance of the writ."' (quoting Walter B. Jones, Habeas Corpus, State and Federal, Ala. Law., Oct. 1952, at 384)).
"In this case, Boykins is not challenging the duration of his sentence. Neither is he asserting that he is unlawfully imprisoned because he has completed all of the time he was sentenced to serve. The facts in this case do not raise the question whether a sentence has been correctly calculated, as did Breach and Swicegood, supra, and those cases, relied upon by the Court of Criminal Appeals, are not applicable to this case. Rather, in this case, Boykins is challenging the propriety of the DOC's ruling on his request for IGT. We agree with the determination of the Court of Criminal Appeals, relying on Ala.Code 1975, § 14-9-41, Coslett v. State, 697 So.2d 61 (Ala.Crim.App.1997), Parker v. State, 648 So.2d 653 (Ala.Crim.App.1994), and Gullett v. State, 613 So.2d 400 (Ala.Crim.App.1992), that Boykins does not have a liberty interest in the DOC's ruling on *742 his request to qualify for IGT. Boykins is not asserting that the DOC deprived him of IGT he had previously earned, as to which he would have a liberty interest. Just as a writ of habeas corpus has no application to a sentence a prisoner has not begun to serve, Heflin [v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959)], neither does the writ have application to IGT Boykins has not begun to earn. Because Boykins does not have liberty interest in the DOC's ruling on his application for IGT, the Court of Criminal Appeals erred in concluding that the circuit court correctly treated his petition for a writ of certiorari as a petition for a writ of habeas corpus.
". . . .
". . . In this case, Boykins's petition was correctly labeled as a petition for a writ of certiorari, but incorrectly reviewed as a petition for a writ of habeas corpus. It cannot be reviewed as a petition for a writ of habeas corpus because it does not seek relief from a restraint on any liberty Boykins has at present.
"Moreover, we note that the DOC, as stated in Ala.Code 1975, § 14-1-1.2, is an `administrative department responsible for administering and exercising direct and effective control over penal and corrections institutions throughout this state.' (Emphasis added.) Ala.Code 1975, § 41-22-3(1), defines `agency' as `[e]very board, bureau, commission, department, officer, or other administrative office or unit of the state.' (Emphasis added.) Accordingly, the DOC is an administrative agency that is within the scope of the Alabama Administrative Procedure Act, Ala.Code 1975, § 41-22-1 et seq. (`the Act'). The appropriate remedy to review the actions of administrative agencies is an appeal made in accordance with § 41-22-20(a) of the Act. However, pursuant to § 41-22-3(9)(g)(1), as noted in Cox [v. State, 628 So.2d 1075 (Ala.Crim.App.1993)], Boykins has no right to avail himself of such judicial review.
". . . .
"Here, Boykins, an inmate in a public institution, has sought review of the action of an administrative department, i.e., the DOC, regarding its denial of his request to receive IGT. . . . Boykins does not enjoy the statutory right of judicial review provided by § 41-22-20(a), a part of the Act, because he is excluded under § 41-22-3(9)(g)(1).
"`Alabama law is clear that, in the absence of a right of appeal, a party seeking review of a ruling by an administrative agency may petition the circuit court for a common law writ of certiorari.' State Personnel Bd. v. State Dep't of Mental Health & Retardation, 694 So.2d 1367, 1371 (Ala.Civ.App.1997), citing Ellard v. State, 474 So.2d 743 (Ala.Crim.App.1984), affirmed, 474 So.2d 758 (Ala.1985). See also Alabama Dep't of Mental Health & Mental Retardation v. Kirby, 579 So.2d 675 (Ala.Civ.App.1991). `Certiorari will not issue, however, if a right of appeal is available.' State Personnel Board, 694 So.2d at 1371. `[W]here an applicable statute provides no right of appeal and no statutory certiorari review, the only means of review is the common law writ of certiorari.' Hardy v. Birmingham Bd. of Educ., 634 So.2d 574, 576 (Ala.Civ.App.1994). Hence, Boykins's only means to seek review of the actions of the DOC is by a petition for a writ of certiorari. Consequently, the Court of Criminal Appeals erred in affirming the trial court's treatment of Boykins's petition for a writ of certiorari as a petition for a writ of habeas corpus and its denial of that petition."
*743 862 So.2d at 588-94 (footnote omitted). Because a liberty interest has not been implicated in this case, we conclude, based on Ex parte Boykins, that the appellant properly labeled, and the circuit court properly treated, his petition as a petition for a writ of certiorari.
On remand from the Alabama Supreme Court's decision in Ex parte Boykins, this court stated:
"[S]hould an appeal be taken from the Montgomery Circuit Court's judgment, the appeal should be filed with the Court of Civil Appeals, because Boykins's case would be an appeal from an administrative agency, see § 12-3-10, Ala.Code 1975, rather than an appeal from a postconviction writ in a criminal case."
Boykins v. State, 862 So.2d 594, 595 (Ala.Crim.App.2003).
Finally, in McConico v. State, 893 So.2d 577, 581 n. 5 (Ala.Crim.App.2004), this court noted:
"Often, DOC's decisions regarding an inmate's right to earn incentive good time or a reclassification of custody are not based on an inmate's conduct. Rather, such decisions are based on the particular crime of which the inmate was convicted. For example, § 14-9-41 prohibits inmates convicted of certain offenses from being eligible for correctional incentive time, regardless of the inmate's conduct while incarcerated. The same is true with regard to an inmate's custody classification. An inmate's custody classification may be determined by the crime of which he was convicted. For example, inmates are classified as `heinous offenders' based not on their conduct while in custody, but on the crime for which they were convicted. An inmate's classification may also relate, at least in part, to DOC's responsibility to keep the inmate safe from known `enemies.' Those enemies may be inmates housed within the same prison  thus, requiring a different custody classification. Thus, based on the Supreme Court's holding in Ex parte Boykins, this Court would have jurisdiction to review certiorari petitions challenging DOC actions involving an inmate's conduct, while the Court of Civil Appeals would have jurisdiction to review petitions challenging decisions based on factors other than the inmate's conduct."
(Emphasis added.)
In this case, the appellant filed an appeal from a circuit court's denial of a petition for a writ of certiorari that challenged a decision by an administrative agency  DOC. Furthermore, in his petition, he challenged a custody reclassification that was not based on conduct that occurred while he was in prison. Cf. McConico, supra. Based on the Alabama Supreme Court's decision in Ex parte Boykins, this court's decisions in Boykins and McConico, and § 12-3-10, Ala.Code 1975, we conclude that the Alabama Court of Civil Appeals has jurisdiction to hear this appeal. Accordingly, we transfer this appeal to that court.
APPEAL TRANSFERRED.
McMILLAN, P.J., and WISE, J., concur; SHAW, J., dissents, with opinion, which COBB, J., joins.
SHAW, Judge, dissenting.
I cannot agree that this appeal should be transferred to the Court of Civil Appeals; therefore, I respectfully dissent.
The majority does not hold that a common-law writ of certiorari is not a "postconviction writ" within the meaning of *744 § 12-3-9, Ala.Code 1975.[2] In fact, the majority acknowledges that this Court has jurisdiction over an appeal from a circuit court's denial of a petition for a writ of certiorari challenging a custody reclassification decision by the Alabama Department of Corrections ("DOC") when that decision is based on an inmate's conduct that occurred in prison. See also Ex parte Alabama Bd. of Pardons & Paroles, 849 So.2d 255 (Ala.Crim.App.2002).[3] However, relying on the Alabama Supreme Court's recent decision in Ex parte Boykins, 862 So.2d 587 (Ala.2002); this Court's opinion on remand in Boykins v. State, 862 So.2d 594 (Ala.Crim.App.2003) (Cobb and Shaw, JJ., concurring in the result); McConico v. Alabama Department of Corrections, 893 So.2d 577 (Ala.Crim.App.2004) (Cobb and Shaw, JJ., concurring in the result); and § 12-3-10, Ala.Code 1975, the majority holds that although this Court has jurisdiction to review a circuit court's ruling on a certiorari petition challenging the DOC's actions involving an inmate's conduct in prison, the Court of Civil Appeals has jurisdiction to review a circuit court's ruling on a certiorari petition challenging the DOC's reclassification of an inmate based on factors other than the inmate's conduct in prison.
The majority's rationale for making this fine distinction is not entirely clear to me; however, it appears that it is based on the majority's conclusion that this Court's jurisdiction depends on the applicability of the Alabama Administrative Procedure Act, Ala.Code 1975, § 41-22-1 et seq. ("the AAPA"). The following quote from McConico, which, I believe, was written at least in part to explain the majority's opinion on remand in Boykins, seems to reflect the majority's position:
"Here, just as in Boykins, McConico is appealing a circuit court's decision on a petition for a writ of certiorari challenging a decision of an administrative agency. However, unlike in Boykins,4 McConico's certiorari petition challenged a custody reclassification based on conduct that occurred while he was an inmate. Thus, while this Court did not have jurisdiction to review an appeal from the denial of Boykins's certiorari petition, we do have jurisdiction to review *745 McConico's appeal because McConico's petition falls within the exception set out in § 41-22-3(9)g.1., Ala.Code 1975 (exempting from the definition of `rule' any actions relating to `[t]he conduct of inmates of public institutions and prisoners on parole').5
4 "DOC's denial of Boykins's request to earn incentive good time was based on the severity of the crime for which he was convicted  murder.
5 "Often, DOC's decisions regarding an inmate's right to earn incentive good time or a reclassification of custody are not based on an inmate's conduct. Rather, such decisions are based on the particular crime of which the inmate was convicted. For example, § 14-9-41 prohibits inmates convicted of certain offenses from being eligible for correctional incentive time, regardless of the inmate's conduct while incarcerated. The same is true with regard to an inmate's custody classification. An inmate's custody classification may be determined by the crime of which he was convicted. For example, inmates are classified as `heinous offenders' based not on their conduct while in custody, but on the crime for which they were convicted. An inmate's classification may also relate, at least in part, to DOC's responsibility to keep the inmate safe from known `enemies.' Those enemies may be inmates housed within the same prison  requiring a different custody classification. Thus, based on the Supreme Court's holding in Ex parte Boykins, this Court would have jurisdiction to review certiorari petitions challenging DOC actions involving an inmate's conduct, while the Court of Civil Appeals would have jurisdiction to review petitions challenging decisions based on factors other than the inmate's conduct."
893 So.2d at 580-81.
Thus, the majority concludes that the application of the AAPA and its statutory procedure for judicial review (which does not include review by this Court) is determinative of the jurisdiction question in cases like this one. Setting aside the fact that the AAPA does not contemplate the filing of a petition for a common-law writ of certiorari to challenge an administrative agency's decision,[4] I am concerned that there is a more fundamental problem with the majority's approach.
In Boykins, the record indicated that Boykins had been convicted of first-degree murder in March 1973 and sentenced to 60 years' imprisonment. In September 1974, while working on a "road camp," Boykins escaped. He remained a fugitive from 1974 until April 1995, when he was returned to the custody of the DOC. While on escape, Boykins pleaded guilty to another murder in Illinois. After his return to the custody of the DOC, Boykins requested eligibility to earn incentive good time ("IGT"). His requests were denied by the DOC "because of its determination that Boykins failed to meet the criteria for receipt of IGT." 862 So.2d at 588. As noted above, in McConico, the majority stated that the "DOC's denial of Boykins's request to earn incentive good time was based on the severity of the crime for which he was convicted  murder." 893 So.2d at 580 n. 4. The majority held in McConico that the DOC's decision to reclassify McConico fell outside of the scope of the AAPA and, therefore, that this Court had jurisdiction to review his appeal, "because McConico's petition [fell] within *746 the exception set out in § 41-22-3(9)g.1., Ala.Code 1975 (exempting from the definition of `rule' any actions relating to `[t]he conduct of inmates of public institutions and prisoners on parole')." 893 So.2d at 580-81. However, in distinguishing Boykins, the majority stated that "unlike in Boykins, McConico's certiorari petition challenged a custody reclassification based on conduct that occurred while he was an inmate." 893 So.2d at 580 (footnote omitted). In other words, while holding in McConico that the AAPA did not apply because, the majority concluded, the DOC's reclassification of McConico was based on conduct that occurred in prison, it stated that Boykins's appeal fell within the jurisdiction of the Court of Civil Appeals because the DOC's denial of his requests for IGT was based on his conduct that occurred out of prison. The problem, as I see it, is that even assuming that the majority correctly characterized the DOC's denial of Boykins's requests to earn IGT as being based solely on conduct that did not occur in prison (presumably, one of the acts of murder for which he was convicted),[5] the Alabama Supreme Court specifically held in Boykins that the AAPA did not apply because the DOC's decision to deny Boykins IGT fell within the statutory exception, i.e., § 41-22-3(9)g.1. Furthermore, it is not insignificant to me that the Supreme Court remanded Boykins to this Court for further proceedings.
It appears to me that the majority's approach is out of step with the Supreme Court's holding in Boykins, and that it is misreading Boykins as requiring the transfer of cases like this one to the Court of Civil Appeals.[6] In my opinion, review in a particular appellate court of the DOC's decision to reclassify an inmate should not logically turn on the time line of the inmate's conduct that forms the basis for that reclassification, i.e., whether it occurred before or after incarceration. In either case, the DOC is making an administrative decision that, under Boykins, appears to fall outside the scope of the AAPA, and is subject to judicial review by way of a petition for the common-law writ of certiorari. This Court is well suited to review such matters and has assumed jurisdiction over cases of this kind for years. I see no compelling reason in either law or logic to make this change in course now.
COBB, J., concurs.
NOTES
[1] We note that this case is distinguishable from Ex parte Deramus, 882 So.2d 875 (Ala.2002), because, unlike Deramus, the appellant has not lost a liberty interest because the record does not indicate that he ever participated in a work release program.
[2] Section 12-3-9 provides that "[t]he Court of Criminal Appeals shall have exclusive appellate jurisdiction of all misdemeanors, including the violation of town and city ordinances, habeas corpus and all felonies, including all post conviction writs in criminal cases."
[3] In Ex parte Alabama Board of Pardons & Paroles, this Court held:

"Before we consider the merits of this petition, we must first determine if this Court is the appropriate court to review Judge Greenhaw's ruling. `[T]o activate this court to superintend a lower court, the petitioner must, inter alia, show that the writ sought is in relation to a matter in which this court has appellate jurisdiction.' Ex parte Goodman, 43 Ala.App. 183, 184, 185 So.2d 146, 148 (1966). The Court of Civil Appeals has jurisdiction of all appeals from administrative agencies. See § 12-3-10, Ala.Code 1975. However, although the Board is an administrative agency, it is exempt from the Alabama Administrative Procedure Act. See § 41-22-3(3), Ala.Code 1975. Review of proceedings from the Board is by a petition for a common-law writ of certiorari filed in the Circuit Court of Montgomery County. See Gholston v. Board of Pardons & Paroles, 627 So.2d 945 (Ala.Civ.App.1993). The Court of Criminal Appeals has jurisdiction of an appeal from the denial of a writ of a certiorari attacking the Board's denial or revocation of parole. We consider such writs to be `postconviction writs' that, according to § 12-3-9, are within the jurisdiction of the Court of Criminal Appeals. Ellard v. State, 474 So.2d 743 (Ala.Crim.App.1984), aff'd, 474 So.2d 758 (Ala.1985). Because this Court has subject-matter jurisdiction of an appeal from the Board's denial of parole, this petition is correctly before this Court."
849 So.2d at 257.
[4] See, e.g., §§ 41-22-20 and -21; see also Ex parte Boykins, 862 So.2d at 593-94. I assume that when it finds the AAPA to be applicable, the majority treats the common-law certiorari petition as the petition for review authorized by § 41-22-20.
[5] I note that in addition to committing murder, as referenced by the majority, Boykins also escaped from custody.
[6] Although the Supreme Court in Boykins did not specifically undertake to construe the language of § 41-22-3(9)g.1.  specifically that part referring to "[t]he conduct of inmates of public institutions"  its holding strongly suggests that it would not construe that language so restrictively as to exclude the conduct of inmates that occurred before incarceration. In any event, I can find nothing in Boykins to assuage my concern over the majority's holding in the present case.