LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment denying this appellant’s petition for a writ of habeas corpus after a hearing thereon at which evidence was presented by the parties. On a previous appeal in the same case, the trial court had denied the petition without an evidentiary hearing, which judgment was reversed and the proceeding remanded “for an evidentiary hearing by the trial court to develop the facts essential for determining whether or not the action of a disciplinary board as challenged in the petition was proper in its decision “to deprive appellant of two years of ‘good time’ for an alleged ‘escape’ from a Decatur work release facility.” Gibson v. State, Ala.Cr.App., 411 So.2d 1297, 1298 (1982). At the time the petition was filed, on November 22, 1981, petitioner was an inmate at G.K. Fountain Correctional Center. Appellant’s attorney, his appointed attorney by reason of indigency of the petitioner-appellant, the same attorney who represented him on the hearing, has filed a well prepared and orderly brief in which he advances four propositions as a basis for his contention that the judgment of the trial court should be reversed. In appellee’s brief, also well prepared and orderly, there are correspondingly numbered counter-propositions. We next consider said propositions and counter-propositions.
I
Appellant says:
“The Failure of State Prison Officials to Permit Petitioner to Have Witnesses of his Choice Present at a Prison Disciplinary Hearing Which resulted in the Loss of Earned Good Time was Viola-tive of Due Process. ”
Appellant relies upon Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), for his argument as to his first proposition. In Wolff v. McDonnell, at 418 U.S. 566, 94 S.Ct. 2979, the court held that an inmate had a right to call witnesses for a disciplinary hearing “when permitting him to do so will not be unduly hazardous to the institutional safety or correctional goals” and would not “create a risk of reprisal or undermine authority.” For factual support of this proposition, appellant correctly states that on the evidentiary hearing in this cause petitioner testified that before the disciplinary hearing, “the officer told me I could not have a witness from Decatur because of the distance involved so I couldn’t call any.”
Appellee’s response to appellant’s proposition is thus stated in appellee’s brief:
“THE RECORD OF APPEAL IS SUFFICIENT TO SUPPORT A RULING BY THE TRIAL COURT THAT APPELLANT DID NOT REQUEST ANY WIT *442 NESSES AT THE DISCIPLINARY HEARING.”
Appellee’s argument as to the first issue is as follows:
“The disciplinary bears Appellant’s signature, and it indicates he did not desire any witnesses at the hearing. This is a sufficient basis for the trial court to rule that Appellant’s due process right to have the opportunity to have desired witnesses present (assuming there would be no security risk involved) was not violated. Williams v. Davis, 386 So.2d 415 (Ala.1980).”
The cited case of Williams v. State, furnishes us the prime precedent, which we are glad to follow as to the troublesome issues resolved therein, but there is not involved therein any issue as to whether petitioners-appellants desired witnesses for a hearing. In the instant case the transcript shows as to such question the following:
“During the cross-examination of the petitioner-appellant at the evidentiary hearing:
“Q. Mr. Gibson, is this your signature right here on this disciplinary?
“A. Yes, sir.
“Q. All right. And these are the statements of fact that you saw before you signed that; correct?
“A. That’s not a statement of fact.
“Q. Excuse me. Up here.
“A. That’s just the charge that I have been charged with.
“Q. Right. And you know about that?
“A. Yes, sir.
“Q. At that time. And this is your signature down here after the disciplinary was concluded; is that correct?
“A. No. What you do there ... This part is not filled in. The action of the disciplinary Board is not filled in at that time. All I did when I signed there was that I was present at the hearing.
“Q. And you didn’t want any witnesses; is that correct?
“A. Well, they wouldn’t bring them to me because they told me they would not bring them from Decatur.
“Q. Well, it says witnesses desired and is checked none.
“A. Well, I could not get witnesses from Decatur.
“Q. Is that contrary to what you said then?
“A. Pardon?
“Q. Is that contrary to what you signed your name to?
“A. I did not call any from Kilby. The officer told me I could not have a witness from Decatur because of the distance involved so I couldn’t call any.
“Q. And your statement is you were only served one disciplinary after you were recaptured?
“A. That is correct.”
According to the previous opinion in the instant case, in which the judgment of the trial court was reversed and the cause remanded with directions, appellant did not claim any “Failure of State Prison Officials to Permit Petitioner to have Witnesses of his Choice Present,” at the disciplinary hearing. The transcript in the instant case does not show as clearly as it should whether there was any denial of any right “to have Witnesses of his Choice Present” at the disciplinary hearing, as claimed by appellant in the first issue presented. Appellant argues in his brief:
“Prior to the hearing, petitioner was denied the right to subpoena any witnesses from Decatur. (R. 17-18). He was further told that he could not call any witness from Decatur ‘because of the distance involved.’ (18) Petitioner contends that this denial of his right to subpoena witnesses to testify at his disciplinary hearing violated his right to due process.”
We have quoted above the parts of the transcript on pages 17 and 18 to which reference is made by appellant in his brief. The quoted excerpt from the transcript indicates, at least, that appellant had signed a statement to the effect that there were no “witnesses desired” by him. It is clear *443 that the writing on the subject was before the trial judge at the time, but it is not contained in the transcript of the proceedings. According the trial court the presumption to which it is entitled, we are not willing to conclude that defendant was denied due process by reason of the position taken by appellant in the first issue presented by him. We think that appellant’s contention that such a conclusion is inconsistent with Wolff v. McDonnell is not well taken.
II
Appellant says:
“The Failure by State Prison Officials to Give Petitioner a Written Copy of the Findings of the Disciplinary Hearing Board was Violative of Due Process. ”
As to this statement, appellant also leans upon Wolff v. McDonnell, supra, at 418 U.S. 563, 94 S.Ct. 2978, 41 L.Ed.2d 955, in its statement to the effect that one of the “minimum requirements of procedural due process” is “a written statement of the fact-findings as to the evidence relied upon and the reasons for the disciplinary action taken.” We think appellant’s proposition as captioned above and his effort to apply it to the instant case constitute an effort to stretch the quoted statement of the Supreme Court. Nor does his contention find support in the cited case of Chavis v. Rowe, 643 F.2d 1281 (7th Cir.1981). In endeavoring to show that appellant was denied a constitutional right to be given “a written copy of the findings of the disciplinary hearing board,” appellant refers to pages 14, 16 and 17 of the transcript, wherein the following testimony on direct examination on the hearing in the instant case is found:
“Q. Were you given a copy of the findings of facts and the ruling of the Board?
“A. No, sir.
“Q. You have a copy at this time, don’t you?
“A. Yes, sir.
“Q. When did you obtain that copy and how did you obtain it?
“A. I obtained it through the mails when the Defendant entered it in evidence as an exhibit in a civil lawsuit that I have in Federal Court.
“Q. Involving this same situation?
“A. Yes.

“Q. All right, sir. And again, you weren’t given a finding of these facts?
“A. I’ve never been formally presented with them.”
The transcript does not suffice to convince us that appellant’s contention II is well taken or that he has been injured in the least by any failure to have a copy of the findings of the board sooner than he procured it. We fully recognize the importance, as we did on the former appeal in the instant case and in Washington v. State, Ala.Cr.App., 405 So.2d 62, of having a “written statement by the factfinders [the disciplinary board] as to the evidence relied on and reasons” of a disciplinary finding in order that justice will be done in any subsequent judicial proceeding in which the constitutionality of the action of the disciplinary board is to be determined. We will refer again to such matter prior to the conclusion of this opinion.
Ill
Appellant asserts:

“The Taking, by State Prison Officials, of Three Years, Eleven Months, and Twenty-Four Days Good Time for Escape from a Community Facility was in Violation of the Administrative Regulations of the State Prison System. ”

More attention is given by appellant and appellee to the third contention of appellant than to either of the other three contentions. It can also be said that more consideration was given to it on the hearing than was given to any other issue between the parties. Nevertheless, we have considerable difficulty in determining what the real issue is between the parties on appeal in view of the ruling of the trial court in favor of appellant on the subject. In response to *444 appellant’s third proposition, appellee captions his argument as follows:
“MAKING APPELLANT INELIGIBLE TO EARN THREE YEARS, ELEVEN MONTHS, AND 24 DAYS OF ‘GOOD TIME’ DID NOT VIOLATE ADMINISTRATIVE REGULATIONS OF THE STATE PRISON SYSTEM.”
In the first paragraph of appellee’s argument in III, it is stated: “The terminology used in the transcript of the hearing in this case is misleading insofar as that terminology indicates earned good time was taken away from Appellant.” The rest of appel-lee’s brief on the subject is devoted to a contention that appellant is erroneously relying for his calculation upon Code of Alabama 1975, § 14-9-41(f)(l) (Cum.Supp. 1981), in overlooking the fact that Code of Alabama 1975, § 14-9^43, provides:
“(a) Any good conduct time credit earned by or otherwise granted to a prisoner prior- to enactment of this article, under laws existing prior to the passage of this article, shall be computed by the Department of Corrections through the date next preceding May 19, 1980, under such laws and such time credit, less any forfeited, shall be granted to the prisoner. “(b) The provisions of this article shall not be applicable to any prisoner serving time prior to May 19, 1980, nor to any person who commits an offense prior to May 19, 1980, even if such person is sentenced after May 19, 1980. Deductions from the sentence of such persons shall be earned at the same rate as provided by law prior to May 19, 1980. All constitutional rights, remedies and privileges of such persons shall not be reduced, diminished or abolished. (Acts 1980, No. 80-446, p. 690, § 4.)”
Under III appellee submits a line of thought that was not mentioned by appel-lee on the hearing in the trial court and is not challenged by appellant by any reply brief on appeal. Thereby there is left in suspense on the submission by the parties on appeal the effect of the result of the trial court’s utterances on the hearing during a colloquy among the trial judge, attorneys for the parties, the petitioner and Mr. Richard Mosley, a witness for the State, who was a representative of the Department of Corrections and was the arresting officer at the disciplinary proceeding against petitioner, which statements of the trial court, in pertinent part, are shown in the following:
“THE COURT: Do you know what the law is on that?
“MR. BAILEY [Petitioner’s attorney]: I do not.
“MR. MOSLEY: Incentive good time is almost like parole. It’s a gift. They don’t have to give you parole, they don’t have to give you incentive good time. It’s just a gift.
“MR. BAILEY: I would argue, though, Your Honor, that once incentive good time has been earned it’s a right that he has earned and he has a right to it and it can’t be taken away without him being notified and having a hearing as to that fact.
“MR. HAWTHORNE [Attorney for the State]: He was given a time sheet.
“MR. MOSLEY: He was given a time sheet and he was taken out of IGT [Incentive Good Time] status.
“MR. HAWTHORNE: And any time you are taken out of IGT status you automatically lose whatever IGT you have.
“MR. MOSLEY: That’s right.
“THE COURT: Was he told why?
“MR. MOSLEY: I doubt if he was told—
“THE COURT: You doubt if he was told why. Okay. I’m ready to rule. The Court is going to deny the petition on the grounds of good time, that is, the two years on good time; however, I am going to rule today that the IGT two year good time ... he lost two years of good time and two years of IGT or one year, eleven months and so many days — that must be reinstated. Now you can ask for a rehearing if you’ve got something further or whatever and I’ll look at it or you can appeal my ruling on it. The State can appeal my ruling on it; but that’s my order right now. In other words, the one year, eleven months, twenty-four days of *445 IGT, based on the testimony here that there is no evidence that he was informed as to why he lost it — must be reinstated; but the two years of good time I’m going to deny his petition on that.”
Some additional statements in the colloquy quoted above will be quoted hereafter in this opinion.
IV
Appellant asserts:

“The Failure of State Prison Officials to Provide the Proper Chairman for the Disciplinary Board for a Prison Disciplinary Hearing Which Resulted in the Loss of Earned Good Time was Viola-tive of Due Process.”

Appellant argues that as the regulations of the prison system “require that the Deputy Warden, the Captain of the Guard or a classification specialist serve as chairman of the disciplinary board, Board of Corrections Administration Regulation 403, § 34(a)” and that not one of the three board members was the Deputy Warden, the Captain of the Guard, or a classification specialist, petitioner was denied his right to be heard by “an impartial board.”
Appellant’s fourth contention is somewhat of a departure from his contention as to the composition of the disciplinary board as noted in the opinion in Gibson v. State, supra, at p. 1298 as follows:
“III. The disciplinary board was composed of Kilby officials only and was, therefore, not ‘fair and impartial.’ ”
Appellant now argues:
“A board composed of members directly responsible for the inmate’s daily supervision, could have bias based upon the member’s past experiences and relations with the inmate, especially if the inmate has a prior history of causing problems.”
Appellant has rested his present contention, materially different from what it was when reviewed on the previous appeal, upon the possibility that the chairman of the board was not “impartial.” Although the possibility thereof is not to be ignored, as it is not to be ignored in any proceeding, judicial or otherwise, there is no semblance of any evidence direct or circumstantial to the effect that the chairman or any other member of the board was not partial. There is no merit in appellant’s fourth contention.
V
Under subdivision V we deal with matters that have not been fully resolved by us as indicated in our discussions under II and III above. As to II, we have stated that the “transcript” is not sufficient to convince us that appellant’s proposition II is well taken. We now note that the “transcript” does not contain all that it should contain in order for us to conclude with reasonable certainty whether the trial court was correct in its rejection of appellant’s second contention. ?The transcript shows that the trial judge had matters before him that we do not have before us, as disclosed by the following parts of the transcript:
“BY MR. BAILEY:
“Q. State your name, please.
“A. My name is Richard Mosley.
“Q. All right. Mr. Mosley, where are you occupied now?
“A. Right now I’m occupied with the Department of Corrections at Central Records Office.
“Q. And you brought with you the records of Robert Gibson today?
“A. I did.
“MR. BAILEY: I would offer them into evidence.
“MR. HAWTHORNE: No objection.
“THE COURT: They will be jointly marked as a joint exhibit of Petitioner and Defendant as Exhibit 1. That’s all the records with leave to copy whatever is there and they can keep the originals.
“(Whereupon, Exhibit 1 was received into evidence.)”
The transcript does not contain Exhibit 1 or a copy of any part thereof. There were references made to the contents thereof. In the absence of the information revealed by the records, we would conclude that, by *446 according the trial court the presumption to which it is entitled, it ruled correctly to the effect that the records contain “a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken” and thereby met one of the pertinent “minimum requirements of procedural due process” set forth in Wolff v. McDonnell, supra. As we do not have before us all of the evidence on the subject, the proceeding should be remanded to the trial court with directions that the rehearing previously conducted be so reopened as to enable appellant, if he cares to do so, to arrange for the transcript to disclose any and all parts of the evidence on the previous hearing that appellant deems favorable to appellant and that if appellant elects to do so the appellee will then be afforded an opportunity to have the transcript show any part of the evidence presented on the previous hearing that it desires on the subject.
As to appellant’s third contention, we conclude that in the light of a,ppellee’s present counter-contention and no response thereto by appellant, we are unable to determine whether the remarks of the trial judge, as to the elimination from the order of the disciplinary board of loss of any earned good time in addition to two years, constituted a part of the judgment of the trial court in its judgment denying appellant’s petition for writ of habeas corpus. In this connection, we quote the conclusion of the transcript of the hearing:
“THE COURT: I’m going to deny the petition for habeas corpus.
“MR. BAILEY: Could I make one last statement. Judge, in this rule book, there are two things: Number one is not the rule book for ... there is a specific rule book for work release facilities which, according to Mr. Mosley, provides for punishment for escape, but in this book the one he was charged with himself it has two sections: Rules and penalties Section A, General, which covers this IGT status and then it has a Section B-major infractions, escape or attempt. Violators will forfeit two years good time. It does not mention that two years good time plus any other punishment in any other section in this rule book; so I would argue that these are separate and distinct and that he can’t lose his good time under both of them.
“THE COURT: That whole file needs to be copied and made a part of this Record. I deny his petition period.
“MR. HAWTHORNE: Your Honor, is this Court relying on ... for the Record—
“THE COURT: And the rule book needs to be copied.
“MR. HAWTHORNE: Yes, sir, I know but—
“MR. MOSLEY: Under appeals, penalties and rules on Page 42 of the Rule Book it says any inmate found guilty of a major or minor disciplinary violation will automatically be removed from IGT status.
“MR. HAWTHORNE: And that’s number six on Page 42, and that’s what the Court is relying on when denying habeas corpus with respect to good time—
“THE COURT: On IGT status.
“Get those copied and get them back to the Reporter for your record. “(Whereupon, Court was dismissed.)”
In remanding the proceeding to the trial court, directions should also be given to the trial court for a clarification of its adjudication of whether appellant has lost any more than two years’ good time by reason of his conduct that was made the basis of the order of the disciplinary board. As it will be necessary to conduct a hearing to provide for an ample transcript of what occurred at the previous hearing, the parties will be given an opportunity to express their views as an aid to the clarification of the adjudication as to whether appellant has lost any more than two years’ good time.
We realize that in most instances in which a transcript of the trial or proceedings is not complete, a complete transcript can be obtained without a remandment of-the cause, but we think, in this particular case, it would be extremely difficult, if not *447 impossible, to provide a sufficient transcript without an order of remandment.
Upon compliance with the order of re-mandment, the trial court shall in due course make its return with copies to counsel for the respective parties. Either party aggrieved thereby will then have thirty days within which to file a brief and the opposing party will have fifteen days thereafter within which to file a reply brief.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REMANDED WITH DIRECTIONS.
DECARLO, P.J., and TYSON and HARRIS, JJ., concur.
BOWEN, J., dissents.