During a prison disciplinary proceeding, the appellant, Clint Coslett, was found guilty of making a false statement to a Department of Corrections employee in violation of Department of Corrections Admin.Reg. No. 403, Annex B, Rule Violation 41, "Making False Statements or Charges." As a result, he was removed from work release, placed in a Class IV classification for three months, and referred for custody and classification review. The appellant filed a Petition for Writ of Habeas Corpus, alleging that he was denied due process of law because the charge against him was improper and because he was not allowed to call two witnesses at the disciplinary hearing. The State filed a Motion to Dismiss, arguing that, because his punishment did not include a loss of accrued "good time," the appellant was not entitled to the procedural protections ofWolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935
(1974). The trial court denied the petition, noting that the appellant had not lost any accrued "good time" and finding that the appellant had failed to state a cause of action concerning the disciplinary proceeding. Subsequently, the appellant filed a Traverse to the State's Motion to Dismiss, a Motion for the Appointment of Counsel, a Motion for an Evidentiary Hearing, and a Motion for Reconsideration. The trial court denied the Motion for Reconsideration on December 20, 1996, and the appellant filed a Notice of Appeal on January 3, 1997.
The appellant argues that the trial court erred in finding that no liberty interest was involved and in dismissing his petition. Although he did not lose any accrued "good time," the appellant argues that, in essence, he lost "good time" because he lost the ability to earn "good time" for several months. Therefore, he argues that he was entitled to the Wolff
procedural protections because he had a protected liberty interest in remaining in the highest classification and continuing to earn "good time" at the highest rate.
Alabama gives inmates an opportunity to reduce their prison sentences through incentive time or "good time" deductions. § 14-9-41, Ala. Code 1975. That statute provides, in pertinent part, as follows:
 "(a) Each prisoner who shall hereafter be convicted of any offense against the laws of the State of Alabama and is confined, in execution of the judgment or sentence upon any conviction, in the penitentiary or at hard labor for the county or in any municipal jail for a definite or indeterminate term, other than for life, whose record of conduct shows that he has faithfully observed the rules for a period of *Page 63 
time to be specified by this article may be entitled to earn a deduction from the term of his sentence as follows:
 "(1) Seventy-five days for each 30 days actually served while the prisoner is classified as a Class I prisoner.
 "(2) Forty days for each 30 days actually served while the prisoner is a Class II prisoner.
 "(3) Twenty days for each 30 days actually served while the prisoner is a Class III prisoner.
 "(4) No good time shall accrue during the period the prisoner is classified as a Class IV prisoner.
 "(b) Within 90 days after May 19, 1980, the Commissioner of the Department of Corrections shall establish and publish in appropriate directives certain criteria not in conflict with this article for Class I, II, III, and IV prisoner classifications. Such classifications shall encompass consideration of the prisoner's behavior, discipline, and work practices and job responsibilities.
 "(c)(1) Class I is set aside for those prisoners who are considered to be trustworthy in every respect and who, by virtue of their work habits, conduct and attitude of cooperation have proven their trustworthiness. An example of a Class I inmate would be one who could work without constant supervision by a security officer.
 "(2) Class II is that category of prisoners whose jobs will be under the supervision of a correctional employee at all times. Any inmate shall remain in this classification for a minimum period of six months before being eligible for Class I.
 "(3) Class III is for prisoners with special assignments. They may not receive any of the privileges of Class I and Class II inmates. Any inmate shall remain in this classification for a minimum period of three months before being eligible for Class II.
 "(4) Class IV is for prisoners not yet classified and for those who are able to work and refuse, or who commit disciplinary infractions of such a nature which do not warrant a higher classification, or inmates who do not abide by the rules of the institution. Inmates who are classified in this earning class receive no correctional incentive time. This class is generally referred to as 'flat time' or 'day-for-day'. Any inmate shall remain in this classification for a minimum period of 30 days before being eligible for Class III.
 "(5) No inmate may reach any class without first having gone through and meeting the requirements of all lower classifications.
". . . .
 "(e) Provided, however, no person may receive the benefits of correctional incentive time if he or she has been convicted of a Class A felony or has been sentenced to life, or death, or who has received a sentence for more than 15 years in the state penitentiary or in the county jail at hard labor or in any municipal jail. No person may be placed in Class I if he or she has been convicted of an assault where the victims of such assault suffered the permanent loss or use or permanent partial loss or use of any bodily organ or appendage. No person may be placed in Class I if he or she has been convicted of a crime involving the perpetration of sexual abuse upon the person of a child under the age of 17 years.
"The court sentencing a person shall note upon the transcript to accompany such prisoner the fact that he or she has been sentenced as a result of a crime that forbids his or her being classified as a Class I prisoner.
 "(f)(1) If during the term of imprisonment a prisoner commits an offense or violates a rule of the Department of Corrections, all or any part of his correctional incentive time accrued pursuant to this section shall be forfeited.
 "(2) The Commissioner of the Department of Corrections shall have the power to restore to any prisoner who has heretofore, or who may hereafter, forfeit the deductions allowed him or her for good behavior, work habits and cooperation, or good conduct, by violating any *Page 64 
existing law or prison rule or regulation such portion of his deduction for good conduct or good behavior as may be proper in his judgment, upon recommendation and evidence submitted to him by the warden in charge."
§ 14-9-41, Ala. Code 1975. This statute is couched in discretionary terms. For example, the statute provides that an inmate who has "faithfully observed the rules for a period of time . . . may be entitled to earn a deduction." § 14-9-41(a), Ala. Code 1975. Therefore, inmates in Alabama are not entitled to receive, and thus do not have a liberty interest in receiving, "good time" deductions from their sentences. Statev. Malone, 654 So.2d 92 (Ala.Cr.App. 1995); Parker v. State,648 So.2d 653 (Ala.Cr.App. 1994); Gullett v. State,613 So.2d 400 (Ala.Cr.App. 1992). However, once an inmate does actually earn "good time," it may not be taken away without due process.Ex parte Hawkins, 475 So.2d 489 (Ala. 1985); Ex parteBland, 441 So.2d 122 (Ala. 1983); Williams v. Davis,386 So.2d 415 (Ala. 1980); Keenan v. Bennett, 613 F.2d 127 (5th Cir. 1980); Diamond v. Thompson, 364 F. Supp. 659 (M.D.Ala. 1973), aff'd, 523 F.2d 1201 (5th Cir. 1975).
The opportunity to earn "good time" is a privilege, not a right, in Alabama. Prisoners may earn higher classifications, and thus more "good time," through good behavior. A higher classification is based on a prisoner's trustworthiness, willingness and ability to work, and behavior while in prison. Accordingly, a favorable evaluation of a prisoner's conduct may result in a move to a higher classification so that he can earn more "good time" for each day served. Because Alabama's system is an incentive system, prison officials must have the authority to place prisoners who do not follow the rules or who fail to meet the requirements of a higher classification in lower classifications.
In Sandin v. Conner, the United States Supreme Court set forth the standard by which to evaluate whether alleged liberty interests are indeed protected by the Due Process Clause and thus entitled to the Wolff procedural protections.515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In so doing, the Court stated as follows:
 "The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum [v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
515 U.S. at 483-84, 115 S.Ct. at 2300. A liberty interest analysis under Sandin focuses on the nature of the deprivation. Based on that Court's analysis, discipline that "falls within the expected parameters of the sentence imposed by a court of law" and is not a "dramatic departure" from the normal conditions of confinement does not constitute an atypical, significant deprivation that necessitates due process protections. 515 U.S. at 485, 115 S.Ct. at 2301.
Therefore, we must apply the Sandin principles to this case to determine whether the appellant's asserted liberty interest is actually a constitutionally protected liberty interest. The Alabama "good time" statute specifically states that the Class IV classification is for prisoners who commit disciplinary infractions of such a nature which do not warrant a higher classification or who do not abide by the rules of the institution. § 14-9-41(c)(4), Ala. Code 1975. In addition, certain classes of prisoners are not allowed to earn "good time" at all, while others are not allowed to earn "good time" in the highest classification. § 14-9-41(e), Ala. Code 1975. Each new prisoner is automatically placed in Class IV until he can be classified and remains there for a minimum period of 30 days. § 14-9-41(c)(4), Ala. Code 1975. Even though a prisoner placed in Class IV does not earn "good time," no time is being added to his sentence. Therefore, the loss of a higher classification and the corresponding ability to earn "good time" at the same rate *Page 65 
as before a disciplinary proceeding is not an "atypical and significant hardship" in relation to the ordinary incidents of prison life in Alabama.
In Luken v. Scott, the Court of Appeals for the Fifth Circuit recently addressed an argument similar to the one presented by the appellant. 71 F.3d 192 (5th Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1690, 134 L.Ed.2d 791 (1996). The plaintiff in that case contended that the mere opportunity to earn "good time" constituted a constitutionally cognizable liberty interest sufficient to trigger the protection of the due process clause. Luken, 71 F.3d at 193. Further, he claimed that taking away that opportunity violated a liberty interest because the effect of his custodial status in administrative segregation was to reduce his opportunity to earn "good time" to reduce his sentence and accelerate his eligibility for parole. The court held that the loss of the opportunity to earn "good time" was a collateral consequence of the plaintiff's custodial status and did not rise to the level of a liberty interest deprivation. Id. That court further observed that many disciplinary or administrative decisions by prison officials could affect a prisoner's ultimate release date, but they have not been held to create liberty interests. Id. at 193-94.
Similarly, the appellant argued that, in effect, he lost "good time" because he lost the ability to earn "good time" for three months. However, because he violated the rules and regulations, he was reclassified and placed in a classification in which he could not earn "good time" for three months. Thus, the loss of ability to earn "good time" was a collateral consequence of a classification change based upon the appellant's improper conduct and did not rise to the level of a liberty interest deprivation.
The Fifth Circuit also reached the same conclusion as this court in determining that an inmate is not entitled to continue to earn "good time" once he starts earning it. Bulger v. UnitedStates Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995). In that case, a prisoner lost his Federal Prison Industries (UNICOR) job assignment which allowed him to accrue extra "good time" credits automatically. Bulger, 65 F.3d at 49-50. He argued that he had suffered a liberty interest deprivation because he lost extra "good time" credits. Id. at 50. However, the court found that he lost only the ability to accrue the credits automatically and that, therefore, there was no liberty interest at issue. The court specifically noted that the loss of the ability to earn extra "good time" credits automatically would not necessarily affect the duration of his sentence. The court also pointed out that, to have a property interest in a benefit, a prisoner must have more than a unilateral expectation of it. Instead, he must have a "legitimate claim of entitlement to it." Id. (quoting Board of Regents v. Roth,408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Therefore, the court held that the plaintiff had no legitimate claim of entitlement to continuing UNICOR employment and that he had not been improperly deprived of a liberty or property interest. Id.
Similarly, we find that the appellant did not have a constitutionally protected liberty interest in remaining in the highest classification he had achieved and continuing to earn "good time" at the same rate as he did before the disciplinary proceeding. The appellant had no legitimate claim of entitlement to remaining in the highest classification and continuing to accrue "good time" at the same rate as before he was disciplined. Neither the "good time" statute nor the Due Process Clause itself creates a protected liberty interest that would entitle the appellant to the procedural protections set forth in Wolff. The punishment imposed was within the range of punishment normally expected for inmates who violate the prison rules and regulations. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur. *Page 66