Rel: December 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2024-0710

_____

### Traveka Stanley, Reginald Burrell, Charlie Gray, and Jermaine Pringle

### v.

### Kay Ivey, Governor of Alabama, and John Hamm, Commissioner of the Alabama Department of Corrections, in their official capacities

### Appeal from Montgomery Circuit Court
### (CV-24-900649)

FRIDY, Judge.

Traveka Stanley, Reginald Burrell, Charlie Gray, and Jermaine Pringle ("the prisoners"), who are inmates in the custody of the Alabama Department of Corrections ("ADOC"), appeal from a judgment of the

Montgomery Circuit Court ("the trial court") dismissing their complaint against Kay Ivey, in her official capacity as the governor of Alabama ("Governor Ivey"), and John Hamm, in his official capacity as the commissioner of ADOC ("Commissioner Hamm").[1] For the reasons stated herein, we affirm the trial court's judgment.

## Appellate Jurisdiction

The prisoners originally appealed from the trial court's judgment to this court. Concluding that we lacked jurisdiction, we transferred the appeal to our supreme court. In an opinion issued on September 5, 2025, however, our supreme court held that the appeal was within this court's appellate jurisdiction and transferred it back to this court. See Stanley v. Ivey, [Ms. SC-2025-0058, Sept. 5, 2025] ___ So. 3d ___ (Ala. 2025).

---

[1]Originally, Dexter Avery was also a plaintiff in the prisoners' action. However, after the trial court entered its final judgment, but before the prisoners appealed, Avery died in prison.

Originally, Ranquel Smith was also a plaintiff in the prisoners' action, and he was a party to this appeal, but, on July 9, 2025, the parties filed a "Joint Motion for Partial Dismissal" because Smith was paroled from the physical custody of ADOC on July 3, 2025. On July 23, 2025, our supreme court granted the parties' requested dismissal of Smith from this case. Because Smith had been the only plaintiff who asserted Count 3 of the prisoners' complaint, which challenged the constitutionality of an amended version of § 14-9-41, Ala. Code 1975, Smith's dismissal from the case also dismissed Count 3 in its entirety.

2

<u>Background</u>

Because we are reviewing a judgment granting a motion to dismiss, we must accept the <u>factual</u> allegations in the prisoners' complaint as true and treat them as the facts pertinent to this appeal. <u>See</u>, <u>e.g.</u>, <u>Ex parte Blankenship</u>, 893 So. 2d 303, 305 (Ala. 2004) (holding that, in reviewing a ruling on a motion to dismiss, an appellate court must accept the allegations of the complaint as true). However, we are not required to accept the prisoners' conclusory allegations regarding the legal effect of those facts. <u>See</u> <u>Ohio Valley Conf. v. Jones</u>, 385 So. 3d 948, 969 (Ala. 2023) ("'Although we are required to accept [the plaintiff's] <u>factual</u> allegations as true [in reviewing a judgment granting a motion to dismiss], we are not required to accept her <u>conclusory</u> allegations that [the defendant] acted willfully, maliciously, fraudulently, or in bad faith. Rather, to survive [the defendant's] motion to dismiss, [the plaintiff] was required to plead <u>facts</u> that would support those conclusory allegations.'" (quoting <u>Ex parte Gilland</u>, 274 So. 3d 976, 985 n.3 (Ala. 2018))).

The prisoners' complaint alleges that each of them is incarcerated in an ADOC facility, that each of them participates in a voluntary work-release program authorized by Alabama law that pays the prisoners for

their labor, and that each of them is required to perform housekeeping duties at the ADOC facilities where they are incarcerated, such as cleaning inmate cells and other prison areas, garbage pickup, facility repair, cafeteria duty, and laundry. The prisoners allege that they receive no monetary compensation for their labor at their ADOC facilities.

The prisoners' complaint further alleges that ADOC has punished each of them for refusing to work, being late to work, being fired from a work-release job, or complaining about unsafe working conditions. According to the prisoners' complaint, those punishments have included being assigned extra work duty without pay, losses of telephone and canteen access, losses of visitation hours, losses of passes to visit family members, losses of good-time credits, and receiving unfavorable disciplinary reports that may affect their consideration for parole. Each of the prisoners alleges that he or she "wants to work for a free-world employer, but [he or she] does not want to be punished by ADOC for not working if [he or she] cannot work or declines to do so, including for reasons such as illness or unsafe working conditions."

The prisoners' complaint alleges that Governor Ivey signed Executive Order No. 725 ("EO 725"), titled "Promoting Public Safety by

4

Establishing Standards and Accountability for Correctional Incentive Time." Their complaint further alleges that "EO 725 explicitly requires punishment in the form of loss of good time and inability to accrue good time for refusing to work and permits other types of punishment, such as solitary confinement and loss of prison privileges." Moreover, the complaint alleges that EO 725 instructed the ADOC commissioner to "implement ... uniform minimum standards for correctional incentive time sanctions pursuant to ... § 14-9-41(f)(1)[, Ala. Code 1975]."

The prisoners' complaint also alleges that, in response to EO 725, Commissioner Hamm revised ADOC Administrative Regulation 403 ("AR 403"), titled "Procedures for Inmate Rule Violations." The prisoners allege that "AR 403 sets out a scheme of rule violations, categorized by severity, and prescribes the possible forms of punishment for each rule violation." The prisoners allege that the forms of punishment include forfeiture of good-time credit; a possible bar on earning good-time credit; loss of privileges and incentives such as canteen, telephone, and visitation privileges and short-term passes to leave community-based facilities; and the imposition of "restrictive housing," i.e., solitary confinement. The prisoners allege that AR 403 also allows ADOC to issue

5

behavior citations and disciplinary reports to inmates that commit violations while engaged in a work-release program, the Alabama Correctional Industries ("ACI") program, or ADOC-facilities labor that could have a negative effect on the Alabama Board of Pardons and Paroles' determinations regarding their parole.

The prisoners' complaint points out that, before the adoption of Alabama's recompiled Constitution in 2022, the Alabama Constitution of 1901 (Off. Recomp.), Article I, § 32, provided: "That no form of slavery shall exist in this state; and there shall not be any involuntary servitude, <u>otherwise than for the punishment of crime, of which the party shall have been duly convicted</u>." (Emphasis added.) However, the prisoners' complaint points out that, after the adoption of the recompiled Constitution in 2022, the same provision states: "That no form of slavery shall exist in this state; and there shall not be any involuntary servitude." Art. I, § 32, Ala. Const. 2022. The prisoners allege that the language that was deleted from Article I, § 32, was removed as a vestige of "racist language" due to Alabama's history of slavery, black codes, convict leasing, and chain gangs.

The prisoners assert that EO 725 and AR 403 violate Article I, § 32, of the current Alabama Constitution because, the prisoners allege, "they require and enforce slavery and involuntary servitude." As relief, the prisoners' complaint seeks a judgment declaring EO 725 and AR 403 unconstitutional and injunctions prohibiting Governor Ivey, Commissioner Hamm, and their employees, agents, and successors from enforcing EO 725 and AR 403. Stanley also seeks expungement of "any disciplinary and behavior citations issued after November 28, 2022, related to refusing to work or not working from [her] disciplinary and other ADOC records."

On June 5, 2024, Attorney General Steve Marshall, on behalf of Governor Ivey and Commissioner Hamm, filed a motion to dismiss the prisoners' complaint. The attorney general argued that the trial court lacked subject-matter jurisdiction over the prisoners' claims under Article I, § 14, Ala. Const. 2022; that the prisoners lacked standing to challenge EO 725 because none of the prisoners possessed good-time credit at the time they commenced the lawsuit and were ineligible to accrue such credit; and that the prisoners had failed to state a claim for which relief could be granted because, according to the attorney general,

even under the conditions alleged by the prisoners, the work they perform does not constitute slavery or involuntary servitude under a correct interpretation of Article I, § 32. On July 22, 2024, the prisoners responded to the motion to dismiss.

On July 29, 2024, the trial court held a hearing regarding the motion to dismiss. On August 1, 2024, the trial court entered a judgment dismissing the prisoners' claims against Governor Ivey and Commissioner Hamm. In pertinent part, the judgment stated: "[T]he Court finds that the motion [to dismiss] is due to be GRANTED because the Court lacks subject-matter jurisdiction due to sovereign immunity and lack of standing. [The prisoners'] claims are thus DISMISSED." (Capitalization in original.) Thereafter, the prisoners timely filed a notice of appeal to this court.

## Standard of Review

As discussed below, we resolve this appeal by considering whether the prisoners' complaint stated a claim under Rule 12(b)(6), Ala. R. Civ. P. The standard of review applicable to a dismissal under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in favor of the plaintiffs, there is any set of facts the plaintiffs

could prove that would entitle them to relief. See Ex parte Bitel, 45 So. 3d 1252, 1255 (Ala. 2010). In making this determination, the appellate court does not consider whether the plaintiffs will ultimately prevail, but only whether they may possibly prevail. Id.

Issues

After our supreme court transferred this appeal back to this court, the prisoners filed a notice stating:

> "The only issues presently before this Honorable Court are whether the Montgomery County Circuit Court properly dismissed [the prisoners'] complaint on the grounds of standing and sovereign immunity. Stanley v. Ivey, No. SC-2025-0058 ... (Ala. Sept. 5, 2025) ('[T]he merits of [the prisoners'] claims [are] not before the appellate court because the circuit court had dismissed the prisoners' complaint on the grounds of standing and sovereign immunity, not on the ground that the prisoners had failed to state a claim under § 32 of the Alabama Constitution,' and thus 'a constitutional issue of first impression [is] not before the appellate court.').''

(Emphasis added.)

However, the fragment of a sentence from Stanley that the prisoners quoted in their notice regarding the issues on appeal was not a holding of the supreme court; rather, it was the supreme court's recitation of an argument that the prisoners had made in opposition to the attorney general's motion to transfer the prisoners' appeal to the

9

supreme court. The full sentence from which the prisoners took the quoted fragment states: "<u>The prisoners also argued that</u> the merits of their claims were not before the appellate court because the circuit court had dismissed the prisoners' complaint on the grounds of standing and sovereign immunity, not on the ground that the prisoners had failed to state a claim under § 32 of the Alabama Constitution, and so, they said, a constitutional issue of first impression was not before the appellate court." <u>Stanley</u>, ___ So. 3d at ___ (emphasis added). In their notice regarding the issues before this court, the prisoners also ignored the language in <u>Stanley</u> stating that the attorney general had "argued in the motion to dismiss that the prisoners' 'allegations fail to state a claim under § 32 of the Constitution.'" <u>Id.</u> at ___. The prisoners further ignore

> "that, aside from exceptions not relevant here, 'this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.' <u>Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,</u> 881 So. 2d 1013, 1020 (Ala. 2003)."

<u>Id.</u> at ___. Our supreme court declined to accept a transfer of the appeal based on any constitutional issues presented by the appeal because, it said, "the Court of Civil Appeals did not consult with this Court to seek a transfer of this case under § 12-3-15[, Ala. Code 1975,] based on any

10

perceived need to evaluate the prisoners' constitutional claims in an expedited manner or for any other valid reason." Id. at ___ (footnote omitted).

"'A court has jurisdiction to determine its own jurisdiction.'" Miles v. Helms, 359 So. 3d 266, 270 (Ala. 2022) (citation omitted). However, having held that this court had appellate jurisdiction over the prisoners' appeal and having declined to accept this court's transfer of the appeal to it based on any constitutional issues the appeal presented, our supreme court had no further jurisdiction and could not determine what issues this court could consider on appeal. See id. Thus, nothing in Stanley precludes this court from considering the merits of the prisoners' claims on appeal, and we will consider that issue pursuant to the legal principle that, as our supreme court, quoting Liberty National, 881 So. 2d at 1020, stated in Stanley: "[A]side from exceptions not relevant here, 'this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.'" ___ So. 3d at ___.

Analysis

We hold that the issue whether the prisoners' complaint stated a claim upon which relief could be granted is dispositive of this appeal and that our resolution of that issue mandates affirmance of the trial court's judgment granting the motion to dismiss that Governor Ivey and Commissioner Hamm filed.

The prisoners' action could survive the motion to dismiss for failure to state a claim upon which relief could be granted only if they alleged facts establishing that EO 725 and AR 403 violated Article I, § 32. To do so, they had to allege facts that would support their conclusory allegations that EO 725 and AR 403 violated Article I, § 32. See Ohio Valley Conf., 385 So. 3d at 969. Therefore, to survive the motion to dismiss for failure to state a claim, they were required to allege facts supporting the conclusion that EO 725 and AR 403 imposed involuntary servitude on them.

Governor Ivey and Commissioner Hamm have not cited any Alabama caselaw defining "involuntary servitude" in the context presented by this appeal, and we are not aware of any. However, section one of the Thirteenth Amendment to the United States Constitution,

which was ratified before Article I, § 32, provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." That language is substantially the same as the language of Article I, § 32, before the ratification of the recompiled Alabama Constitution in 2022 changed it. The United States Supreme Court, in United States v. Kozminski, 487 U.S. 931, 952 (1988), held that the term "involuntary servitude" in the Thirteenth Amendment "necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." None of the punishments the prisoners alleged were imposed by EO 725 and AR 403 for the prisoners' refusal to work involved physical acts or the threat of physical acts to compel them to work. There were no allegations that the prisoners would be beaten or otherwise physically abused if they refused to work or that they would be threatened with physical harm if they refused to work.

Moreover, the prisoners did not allege that they would be coerced through law or the legal process if they refused to work.

13

"'The opportunity to earn "good time" is a privilege, not a right, in Alabama.' <u>Coslett v. State</u>, 697 So. 2d 61, 64 (Ala. Crim. App. 1997). '"'When [a] statute is framed in discretionary terms there is not a liberty interest created.'"' <u>Gullet v. State</u>, 613 So. 2d 400, 401 (Ala. Crim. App. 1992) (quoting <u>Conlogue v. Shinbaum</u>, 949 F.2d 378, 380 (11th Cir. 1991), quoting in turn <u>Thomas v. Sellers</u>, 691 F.2d 487, 489 (11th Cir. 1982))."

<u>Alabama Dep't of Corr. v. Booth</u>, [Ms. CR-2023-0426, Nov. 7, 2025] ___ So. 3d ___, ___ (Ala. Crim. App. 2025).

Loss of good-time credit or the loss of the opportunity to earn good-time credit may, under certain circumstances, trigger a prisoner's due-process rights because they potentially could affect the term of the prisoner's confinement pursuant to his or her existing sentence, <u>see</u> <u>Watkins v. Mitchem</u>, 50 So. 3d 485, 493 (Ala. Civ. App. 2010); however, they do not equate with a conviction of a crime and the imposition of an additional sentence. Thus, although a prisoner may be entitled to due process when his or her good-time credit is eliminated or his or her opportunity to earn good-time credit is eliminated, their elimination does not constitute involuntary servitude.

Similarly, placement of a prisoner in solitary confinement may, under certain circumstances, entitle him or her to due process because it could constitute an alteration in the conditions of his or her confinement,

see id.; however, it does not constitute involuntary servitude because it does not constitute the conviction of a crime and the imposition of an additional sentence. None of the other punishments the prisoners alleged, such as being assigned extra work duty without pay, losses of telephone and canteen access, losses of visitation hours, losses of passes to visit family members, and receiving unfavorable disciplinary reports that may affect consideration for parole constitute involuntary servitude because they do not involve the use of physical coercion, the threat of physical coercion, or the use of or the threat of coercion through law or the legal process. See, e.g., In re Amendments to Rules Regulating the Florida Bar 1-3.1(a) and Rules of Judicial Administration 2.065 (Legal Aid), 573 So. 2d 800, 805 (Fla. 1990) (holding that Thirteenth Amendment's prohibition of involuntary servitude did not prohibit a court from appointing a lawyer to represent an indigent person without his or her consent because, for the prohibition to apply, the person must be subjected to physical restraint or threat of legal confinement as an alternative to the service); and Abbot v. Gould, Inc., 443 N.W. 2d 591, 596 (Neb. 1989) ("Plaintiffs' involuntary servitude argument under the federal Constitution is foreclosed by the holding in U.S. v. Kozminski,

[487 U.S. 931], 108 S.Ct. 2751, 101 L.Ed. 2d 788 (1988), to the effect that the conduct proscribed by the 13th amendment is limited to the use or threat of physical force or legal coercion to extract labor from an unwilling worker.").

<u>Conclusion</u>

We affirm the trial court's judgment because the prisoners' complaint failed to allege facts indicating that EO 725 and AR 403 subjected them to involuntary servitude and, therefore, failed to state a claim upon which relief can be granted. Because we affirm the trial court's judgment on that ground, we omit a discussion of the sovereign-immunity and standing issues.

AFFIRMED.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.